Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

0 6 - 6 7

| United States District Court | District | Delaware |
|---|---|---|

| Name (under which you were convicted): Robert W. Warrington | Docket or Case No.: |
|---|---|

| Place of Confinement: Delaware Correctional Center | Prisoner No.: OO442182 |
|---|---|

| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
|---|---|
| Robert W. Warrington   v. | Warden Thomas Carrpl |

| The Attorney General of the State of Delaware, Jane Brady |
|---|

FILED

FEB - 1 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
Superior Court, Sussex County of the State of Delaware

(b) Criminal docket or case number (if you know): ID No. 0008014970

2. (a) Date of the judgment of conviction (if you know): Nov. 27, 2001

(b) Date of sentencing: January 18, 2002

3. Length of sentence: Natural Life plus Twenty Five Years

4. In this case, were you convicted on more than one count or of more than one crime? Yes ☒ No ☐

5. Identify all crimes of which you were convicted and sentenced in this case:
Murder 1st degree
Possession of deadly weapon - Knife
Conspiracy 1st degree

6. (a) What was your plea? (Check one)

    (1)   Not guilty ☒       (3)   Nolo contendere (no contest) ☐

    (2)   Guilty ☐         (4)   Insanity plea ☐

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? N/A

Page 3

(c) If you went to trial. what kind of trial did you have? (Check one)

Jury ☒    Judge only ❑

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

Yes ☒  No ❑

8. Did you appeal from the judgment of conviction?

Yes ☒  No ❑

9. If you did appeal. answer the following:

(a) Name of court: Delaware Supreme Court

(b) Docket or case number (if you know): No. 72, 2002

(c) Result: Denied

(d) Date of result (if you know): 3-3-03

(e) Citation to the case (if you know): _____

(f) Grounds raised: Improper Jury Instructions

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?   Yes ❑  No ☒

If yes, answer the following:

(1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Result: N/A

(4) Date of result (if you know): N/A

(5) Citation to the case (if you know): N/A

(6) Grounds raised: N/A

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ❑  No ☒

If yes, answer the following:

(1) Docket or case number (if you know): N/A

Page 4

(2) Result: __N/A__

(3) Date of result (if you know): ___N/A___

(4) Citation to the case (if you know): ___N/A___

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

Yes ☒ No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: __Superior Court of the State of Delaware in and for Sussex County__

(2) Docket or case number (if you know): __Cr. A. No. 0008014970__

(3) Date of filing (if you know): __Feb. 24, 2004__

(4) Nature of the proceeding: __Super. Ct. Cr. R. Rule 61 Motion for Post-Conviction Relief__

(5) Grounds raised: __- Ineffective assistance of counsel at pre-trial__
__stage, trial stage and appeal stage of proceedings.__
__- Conviction obtained through the use of improperly elicited statements__
__- Insufficient evidence to support conviction__
__- Faulty Jury instructions__

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? Yes ☒ No ☐

(7) Result: __Denied__

(8) Date of result (if you know): __Jan. 3, 2005__

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: __N/A__

(2) Docket or case number (if you know): __N/A__

(3) Date of filing (if you know): __N/A__

(4) Nature of the proceeding: __N/A__

(5) Grounds raised: __N/A__

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition. application. or motion?     Yes ❑    No ❑

(7) Result: __N/A__ _____

(8) Date of result (if you know): __N/A__ _____

(c) If you filed any third petition, application, or motion. give the same information:

(1) Name of court: __N/A__ _____

(2) Docket or case number (if you know): __N/A__ _____ _____

(3) Date of filing (if you know): __N/A__ _____

(4) Nature of the proceeding: __N/A__ _____

(5) Grounds raised: __N/A__ _____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?     Yes ❑ No ❑

(7) Result: __N/A__ _____

(8) Date of result (if you know): __N/A__ _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:       Yes ☒   No ❑

(2) Second petition:    Yes ❑   No ❑

(3) Third petition:      Yes ❑   No ❑

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:
__N/A__ _____

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: _Counsel was ineffective at pre-trial stage, trial stage, and appeal stage of the proceedings._

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _Counsel's representation at all levels fell below an objective standard of reasonableness, and but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different._

(b) If you did not exhaust your state remedies on Ground One, explain why: _N/A_

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐  No ☒

(2) If you did not raise this issue in your direct appeal, explain why: _The proper venue to raise this issue was at the Rule 61 post conviction stage, where it was raised._

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?          Yes ☒  No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Super. Ct. Cr. R. Rule 61 motion for post-conviction relief_

Name and location of the court where the motion or petition was filed: _Superior Court of the State of Delaware In and For Sussex County_

Page 7

Docket or case number (if you know): Cr. A. No. 0008014970

Date of the court's decision: Jan. 3, 2005

Result (attach a copy of the court's opinion or order, if available): Copy Attached

(3) Did you receive a hearing on your motion or petition?

Yes ☒  No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☒  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: In The Supreme Court Of The State Of Delaware

Docket or case number (if you know): No. 41, 2005

Date of the court's decision: Jan. 24, 2006

Result (attach a copy of the court's opinion or order, if available): Copy attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: N/A

GROUND TWO: Conviction obtained by use of statement elicited in violation of Due Process

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
The statement used to convict was elicited with both kept and unkept promises, under threat of returning naked to a freezing basement, while under the influence of Marijuana.

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: __N/A__

_____

_____

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why: __Appellant counsel failed to respond to petitioner's request to do so.__

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☒   No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: __Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief__

Name and location of the court where the motion or petition was filed: __Superior Court of the State Of Delaware In and For Sussex County__

Docket or case number (if you know): __Cr. A. No. 0008014970__

Date of the court's decision: __Jan. 3, 2005__

Result (attach a copy of the court's opinion or order, if available): __Copy Attached__

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☒   No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☒   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: __In The Supreme Court Of The State Of Delaware__

Docket or case number (if you know): __No. 41, 2005__

Date of the court's decision: __Jan. 24, 2006__

Result (attach a copy of the court's opinion or order, if available): __Copy Attached__

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: __N/A__

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: __N/A__

**GROUND THREE:** __Insufficient evidence to support conviction.__

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
__There was insufficient evidence to show intent, so that__
__a conviction of Murder 1st should not have occured, even ignoring__
__the fact that the incident occured in the defendants own residence__
__while being attacked by an intruder. This issue was raised__
__in a rule(61), and yet proceedurally barred for having__
__not been raised before__

(b) If you did not exhaust your state remedies on Ground Three, explain why: __N/A__

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑ No ☒

(2) If you did not raise this issue in your direct appeal, explain why: __Appellant Counsel__
__failed to respond to petitioner's request to raise this issue.__

Case 1:06-cv-00067-GMS    Document 1    Filed 02/01/2006    Page 9 of 55

Page 10

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ☒  No ☐

(2) If your answer to Question (d)(1) is "Yes." state:

Type of motion or petition: _Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief_

Name and location of the court where the motion or petition was filed: _Superior Court of the State Of Delaware In and For Sussex County_

Docket or case number (if you know): _Cr. A. No. 0008049470_

Date of the court's decision: _Jan. 3, 2005_

Result (attach a copy of the court's opinion or order, if available): _Copy Attached_

(3) Did you receive a hearing on your motion or petition?

Yes ☒  No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☒  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _In The Supreme Court Of The State Of Delaware_

Docket or case number (if you know): _No. 41 2005_

Date of the court's decision: _Jan. 24, 2006_

Result (attach a copy of the court's opinion or order, if available): _Copy Attached_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _N/A_

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _N/A_

**GROUND FOUR:** Faulty Jury Instructions

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The jury was improperly instructed as to defense in ones own home.

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

(c) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☒  No ☐

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ☒ No ☐

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: Super. Ct. Cr. R. Rule Col motion for Post-Conviction Relief

    Name and location of the court where the motion or petition was filed: In the Superior Court of the State Of Delaware In and For Sussex County

    Docket or case number (if you know): Cr. A. No. 0008014970

    Date of the court's decision: Jan. 3, 2005

    Result (attach a copy of the court's opinion or order, if available): Copy Attached

    (3) Did you receive a hearing on your motion or petition?

        Yes ☒  No ☐

    (4) Did you appeal from the denial of your motion or petition?

        Yes ☐  No ☒

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑ No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ___N/A___

Docket or case number (if you know): ___N/A___

Date of the court's decision: ___N/A___

Result (attach a copy of the court's opinion or order. if available): ___N/A___

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: ___Proceedural u haired___

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: ___N/A___

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    Yes ☒ No ❑

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: ___No___

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    Yes ❑ No ☒

GROUND ~~FOUR~~ Five: _Denial of Counsel at Rule 61 Post-Conviction Relief evidentiary hearings_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _Counsel should have been appointed, as good cause was shown._

(b) If you did not exhaust your state remedies on Ground Four, explain why: _N/A_

(c) **Direct Appeal of Ground ~~Four~~ Five**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

       Yes ❑   No ☒

   (2) If you did not raise this issue in your direct appeal, explain why: _Evidentiary hearing had not occured yet_

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ❑ No ☒

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _N/A_

   Name and location of the court where the motion or petition was filed: _N/A_

   Docket or case number (if you know): _N/A_

   Date of the court's decision: _N/A_

   Result (attach a copy of the court's opinion or order, if available): _N/A_

   (3) Did you receive a hearing on your motion or petition?

       Yes ❑   No ❑

   (4) Did you appeal from the denial of your motion or petition?

       Yes ❑   No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏ No ❏

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ___N/A___

Docket or case number (if you know): ___N/A___

Date of the court's decision: ___N/A___

Result (attach a copy of the court's opinion or order, if available): ___N/A___

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: ___State trial Court was improper venue for this issue___

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Five ___An Appeal was placed in the Supreme Court of Delaware on this issue. No. 41, 2005___

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?        Yes ☒  No ❏

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: ___N/A___

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: ___No___

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?        Yes ❏  No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. __N/A__

_____

_____

_____

_____

_____

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?     Yes ❑    No ☒
    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. __N/A__

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:
    (a) At preliminary hearing: __Ronald D. Phillips, Jr., Phillips & DeBante__
    __215 East Market St., P.O. Box 561, Georgetown, DE 19947__
    (b) At arraignment and plea: __Ronald D. Phillips, Jr.__

    (c) At trial: __Ronald D. Phillips, Jr.__

    (d) At sentencing: __Thomas David Hunter Barnett, 512 East Market St.__
    __Georgetown, DE 19947__
    (e) On appeal: __Thomas David Hunter Barnett__

    (f) In any post-conviction proceeding: __Pro Se__

    (g) On appeal from any ruling against you in a post-conviction proceeding: __Pro Se__

_____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ❑    No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _N/A_

(b) Give the date the other sentence was imposed: _N/A_

(c) Give the length of the other sentence: _N/A_

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    Yes ❑  No ❑

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*  This petition is filed within the one year statute of limitations if the time-stop while the petitioner exhausted all state remedies is taken into account.

Date of Conviction - 11-27-01
Date of Sentencing - 1-18-02
Prompt notice of appeal, opening brief submitted 8-2-02, decision docketed 3-3-03, petitioner notified 3-25-03
Rule 61 petition for Post-Conviction relief submitted 2-24-04, less than one-year later.
Petition denied on 1-3-05 after which a notice of appeal to the Supreme Court of the State of Delaware was filed on 1-31-05. The appeal was denied on 1-24-06, where upon this writ of Habeas Corpus was prepared and mailed in a timely manner on 1-25-06.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(continued...)

Page 17

Therefore, petitioner asks that the Court grant the following relief: *The granting of a new trial, in the interest of justice*

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _1-25-06_ (month, date, year).

Executed (signed) on _1-25-06_ (date).

_____
Signature of Petitioner

_____

*(...continued)

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. WARRINGTON, | § | |
| | § | No. 72, 2002 |
| Defendant Below, | § | Cr. ID No. 0008014970 |
| Appellant, | § | |
| | § | |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |
| | § | CONSOLIDATED |
| | § | |
| ANDREW WARRINGTON, | § | |
| | § | No. 74, 2002 |
| Defendant Below, | § | Cr. ID No. 0008014979 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior |
| | § | Court of the State of |
| STATE OF DELAWARE, | § | Delaware in and for |
| | § | Sussex County |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 26, 2002
Decided: February 13, 2003

Before **HOLLAND, BERGER,** and **STEELE** Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

At issue in this criminal appeal is the scope of the self-defense within a dwelling defense. Defendants below argue for reversal of their first degree murder convictions on the basis that the defense, once triggered, endures even after the intruder no longer poses a threat. We disagree. The relevant statute requires that the defendant have a reasonable belief that the intruder will injure someone within the dwelling. That reasonable belief must exist at the time a defendant acts in self-defense. Thus, after an intruder has been subdued, a jury could properly find that a killing is not justified as an act of self-defense.

Factual and Procedural Background

A.    The Death of Jesse Pecco

Robert Wesley Warrington ("Wes"), then 22, and Andrew Warrington ("Drew"), then 18, are brothers who lived with their father at 100 Port Lewes in Sussex County. Wes owed an acquaintance, Jesse Pecco, approximately $800 for drugs that Wes had consumed instead of selling. In order to partially repay the debt, Wes forged a check from his father's bank account, making it out to himself in the amount of $700. Wes gave the check to Pecco on Friday, August 11, 2000, and the two men agreed to meet on Monday to cash the check.

3

Pecco did not go to the meeting place. Instead, he drove to 100 Port Lewes, and parked his car directly behind Wes's car so as to immobilize it. Pecco then entered the dwelling through its unlocked front door. Drew, who was upstairs watching television, heard shouts coming from the first floor. When he went downstairs to see what was happening, he found Pecco involved in a physical struggle with Wes. Drew soon realized that the two were fighting over control of a knife that Pecco was holding. Drew struck Pecco from behind, causing him to release the knife. According to Wes, Pecco then had the opportunity to leave the house, but instead chased Drew, who fled up the stairs. Both brothers maintain that Pecco was the aggressor in the fight, and that they believed he posed a threat.

The two brothers testified that they gained the upper hand as Wes stabbed Pecco repeatedly with the knife and Drew struck him repeatedly with a fireplace poker. Ultimately it was determined that Pecco sustained 13 stab wounds, including one that penetrated his left lung, and one that penetrated his heart. Expert testimony at trial revealed that he also suffered eight blunt-force blows to the head, causing a fractured skull and subdural hemorrhaging.

4

Among Pecco's injuries were deep incise stabs to his hands, characteristic of defensive wounds.

During the altercation, a 911 call was made from the Warrington residence. DNA from blood marks found on the telephone used to make the call matched Pecco's DNA. One of these marks was located next to the "one" button on the telephone, indicating that it was Pecco who dialed the emergency number. Drew gave a conflicting account, saying that it was he who dialed the number, only to have Pecco knock the phone from his hands. The jury listened to the sounds of the fight, as recorded on the 911 tape, before reaching its conclusion regarding self-defense. The tape revealed that, towards the end of the fight, Pecco was pleading with the brothers to stop attacking him. He asked, "Why are you guys trying to kill me?" to which one of the brothers responded, "Good reasons." As he died, Pecco said, "Wes, show me some love. Give me a hug before I die. Give me a hug." Testimony demonstrated that Drew responded by kicking him in the face and telling him to shut up.

5

### B. Jury Instructions Below

Wes and Drew's (collectively "defendants") defense to the Pecco murder charges was self-defense within a dwelling. Accordingly, the trial judge instructed the jury:

> A defense raised in this case is justification.... The defense stems from the defendants' assertion that, at the time in question, their actions were justified. The elements of the defense of justification, in this case, are as follows: (1) That the defendants were in their own dwelling at the time of the incident. (2) That Mr. Pecco was [an] intruder unlawfully in defendants' dwelling at the time of the incident. ... (3(b)) That the defendants reasonably believed that Mr. Pecco would inflict [personal] injury upon them. ...
>
> In considering the [defendants'] reasonable belief ... you may consider whether a reasonable man in the defendants' circumstances would have reasonably believed that the intruder would inflict personal injury upon them. You should, however keep in mind, that it is the defendants' state of mind which is at issue here and that it is only required that they, in fact, believed the intruder would inflict personal injury upon them. If, after considering all the evidence to support the defense of justification, you find that such evidence raises a reasonable doubt in your minds as to the defendants' guilt, you should find the [defendants] not guilty of the crime charged.

At another point in the instruction, the judge clarified,

> As to the justification defense of a person unlawfully in a dwelling, if you find Mr. Pecco an intruder unlawfully in the defendants' dwelling and if the defendant overcame Jesse Pecco so that the defendant no longer believed he was in danger of

physical injury or personal injury, and therefore, the defendant knew the use of deadly force was no longer necessary, then the continued use of deadly force was not justified. In other words, *if a person is initially justified in defending himself, but then knows that the danger to him has passed then the subsequent use of deadly force is not justified.* (Emphasis added.)

The jury found both Drew and Wes guilty of murder in the first degree, possession of a deadly weapon during the commission of a felony, and conspiracy in the first degree.

## Discussion

Delaware's statute defining self-defense within a dwelling provides:

In the prosecution of an occupant of a dwelling charged with killing or injuring an intruder who was unlawfully in said dwelling, it shall be a defense that the occupant was in the occupant's own dwelling at the time of the offense, and:

(1) The encounter between the occupant and intruder was sudden and unexpected, compelling the occupant to act instantly; or
(2) The occupant reasonably believed that the intruder would inflict personal injury upon the occupant or others in the dwelling; or
(3) The occupant demanded that the intruder disarm or surrender, and the intruder refused to do so.[1]

---

[1] 11 *Del.C.* §469

7

The question presented in this case is whether the reasonable belief that the intruder would inflict injury must be contemporaneous with the forceful actions taken against the intruder. Defendants contend that, once both intrusion and reasonable belief of danger have occurred, the rightful occupant of the dwelling has "license to slay the intruder" without considering whether the intruder has been disabled so as to no longer pose a threat.

The doctrine of self-defense within a dwelling differs from self-defense in other contexts. A defendant attacked outside her home must retreat rather than use deadly force, but inside her own dwelling she has no duty to retreat, even if she could do so with "complete safety."[2] An early phrasing of this doctrine can be found in *State v. Talley*[3]: "As every man's dwelling house is also his castle of defense, in the eye of the law, he need not retreat at all (he being, in contemplation of law, in the same situation as one attacked elsewhere than in his own house who has retreated until he can do so no further, by

---

[2] 11 *Del. C.* §464(e)(2).
[3] 33 A. 181 (Del. 1886)

8

reason of a wall or other obstruction that prevents him), but may slay his adversary thus attacking him."[4]

In Delaware, the added protection granted to the occupant of a dwelling is not absolute. The statute provides a defense only in three circumstances: when the occupant 1) encounters the intruder suddenly and must act "instantly;" 2) reasonably believes that the intruder will inflict injury; or 3) demands that the intruder disarm or surrender and the intruder refuses. These three circumstances share a common element -- the occupant is being placed in immediate peril. The plain meaning of this immediacy requirement is that the statute only affords protection if the occupant is confronted with one of the three circumstances *at the time* the occupant uses deadly force on the intruder.[5]

Nothing in the statutory language or Delaware case law supports defendants' contention that what begins as self-defense can be turned into a license to kill. Defendants rely on several extremely broad self-defense within

---

[4]*Id.* at 182-83; <u>see also</u> *State v. Mills*, 69 A. 841, 843-44 (Del. Super. Ct. 1908) ("The owner and occupant may kill the trespasser, if he honestly believes, on reasonable grounds, such killing to be necessary to protect his life or his person against a felonious assault by the trespasser in the course of the conflict with him in the rightful defense of his dwelling house and property").

[5]*See Ryan v. State*, 791 A.2d 742,743 (Del. 2002)(Language of unambiguous statute is given its plain meaning.)

9

a dwelling statutes from other jurisdictions in arguing their position. For example, the California statute provides: "[a]ny person using force intended or likely to cause death... within his or her residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury ... when that force is used...."[6]   Colorado's so-called "make my day" statute provides the occupant of a dwelling immunity from prosecution:

> [A]ny occupant of a dwelling is justified in using...deadly force[] against another person when that other person has made an unlawful entry into the dwelling and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.[7]

Delaware's statute, however, is not comparable to either of these statutes. Moreover, defendants have failed to identify any jurisdiction, including California and Colorado, where an occupant of a dwelling is justified in using deadly force after the intruder has been totally subdued.

---

[6]Cal.Penal Code §198.5
[7]§18-1-704.5, 8B C.R.S. (1986).

## Conclusion

Based on the foregoing, we conclude that the "added" jury instruction explaining the limitation on the defense of self-defense within a dwelling correctly stated the law.  Accordingly, the judgements of the Superior Court are hereby AFFIRMED.

SUPERIOR COURT
OF THE
STATE OF DELAWARE

T. HENLEY GRAVES
*RESIDENT JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5257

January 3, 2005

N440
Robert W. Warrington
SBI No. 00442182
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

      RE:   State of Delaware v. Robert W. Warrington
            Defendant ID No. 0008014970(R-1)

Dear Mr. Warrington:

The Defendant filed his first Motion for Postconviction Relief on March 3, 2004. It is 53 pages in length and raises numerous allegations. The Court expanded the record pursuant to Rule 61(g) and received submissions from the Defendant's trial attorney, the Defendant and the State. On October 28, 2004, the Court conducted an evidentiary hearing to assure that everyone had an opportunity to put forth their respective positions and to expose Defendant's trial counsel to examination and cross-examination as to the Defendant's allegations. A second evidentiary hearing took place on December 9, 2004. This decision is necessarily based on credibility determinations as to those issues where witnesses do not agree.

## FACTUAL BACKGROUND

The Defendant was convicted of murder in the first degree and was sentenced to life without parole. Additionally, he was convicted of possession of a deadly weapon during the

-1-

commission of a felony and conspiracy. His brother and co-defendant, Andrew Warrington, was convicted of the same offenses. The Defendant's conviction was affirmed on appeal. Warrington v. State, 840A.2d 590 (Del. 2003) The Supreme Court reviewed the evidence in a light most favorable to the Defendant in stating the factual background of its decision. The Court basically concluded that even if the victim had come to the Defendants' dwelling and was the initial aggressor, and even if the victim threatened the Defendant with a knife, there came a point in time that the victim was overpowered and was helpless. At that time, when the victim was no longer a threat to either of the Defendants, and when the Defendants had complete control over the situation, they intentionally killed him.

The evidence established that the victim was able to break free of the Defendants and briefly secure himself in a room on the first floor of the dwelling. While there, he used a portable house phone to call  911, but before he could communicate anything, the Defendants broke through the door, causing the phone to be knocked aside. The Defendants were unaware that a 911 connection had been made. The 911 tape recording evidences pleas by the victim for help, his confusion was to why they were killing him, and his prayers when he knew he was dying. The tape also evidences the continued beating he received while he was defenseless. Whether or not this homicide was premeditated, or whether events took place as the Defendants testified concerning the victim being the initial aggressor, it is clear, as I stated at sentencing, that the Defendants made the decision to kill, to commit cold-blooded murder.

Robert Warrington was represented by private counsel up until his conviction. He then fired his attorney and a conflict attorney was appointed for both the sentencing and

-2-

appeal. Andrew Warrington was represented by the Public Defender's Office for both the trial and the appeal. The defense teams cooperated, exchanged information and worked on a common defense strategy that was consistent with both Defendants then and present theory of the defense.

The appeal of both cases involved the same single issue. Both Defendants claimed that once the right of self-defense was triggered due to an aggressor being in their dwelling, then that right continues and the Defendant had a "license to kill" even after the intruder has been totally subdued. The Supreme Court did not accept that argument and held that if an intruder has been disabled so as to no longer pose a threat, then the continued use of deadly force is not justifiable. The Supreme Court upheld this Court's instruction stating same.

Mr. Warrington raises 25 claims as to why he should receive a new trial. The majority of his claims are claims of ineffective assistance of trial and appellate counsel. The ineffective assistance claims are not procedurally barred. The procedural bars as to the other claims will be discussed with each individual claim.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel require that the movant establish deficient performance on the part of his attorney which prejudiced the Defendant. The movant must establish a reasonable probability that but for his attorney's unprofessional errors, there exists a reasonable probability that the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine the confidence of the outcome of the trial. Strickland v. Washington, 466 U. S. 668 at 687 and 694 (1984). The movant must establish both deficient performance and prejudice in order to present a successful

-3-

claim of ineffective assistance of counsel. Simply put, if movant fails to establish either the prejudice prong or the deficient performance, then the claim fails. Movant's allegations as to deficient performance on the part of his attorney must be concrete and specific. Conclusory allegations do not support a claim. Younger v. State, Del. Supr., 580 A.2d 552 (1990).

CLAIM #1 - SUPPRESSION

Defendant complains that his attorney was ineffective in the effort to have his statement suppressed. The statement was exculpatory as to the homicide, but contained collateral untruths that haunted the Defendant at trial. The Defendant argues that his statement was a key piece of evidence used by the prosecution in casting doubt as to his own testimony.

In this case, trial counsel moved to suppress Defendant's statement based upon the allegation that the Defendant requested counsel during the interview and therefore the interview process should have ended at that time. This Court issued a written decision and held that any ambiguity as to whether or not the Defendant wanted an attorney was resolved in the State's favor by the specific follow-up questions by the detective. The Court concluded Defendant desired to proceed with the statement without an attorney present.

Defendant now argues that his attorney should have sought to have the statement suppressed as being involuntary. He argues that his attorney knew he had consumed marijuana just prior to the incident resulting in these charges and the statement given that same day. Counsel knew the Defendant was cold and was being detained in a cool or cold holding cell, and that Defendant had been promised to be let go if he gave a statement.

-4-

Therefore, Defendant alleges that his attorney's performance was deficient in not seeking to suppress his statement on voluntariness grounds.

Any issue of "being cold" was resolved at the time of the statement. The tape of the statement evidences the Defendant's complaint that he was cold, but it also evidences that the detective took note of Defendant's concerns and was cognizant that the complaint be addressed independent of Defendant's decision on whether he wished to talk with the detective. Being cold was not a voluntariness issue.

As to being under the influence of marijuana at the time of the statement, the Defendant's attorney testified he specifically inquired as to his client's drug use or being under the influence of drugs. The Defendant denied any drug use. Defense counsel testified that the first he learned of the alleged drug consumption was when he read the Rule 61 Motion. I find defense counsel's recollection to be more credible. The police detective testified Defendant didn't appear to be under the influence of marijuana. The tape of the Defendant's statement does not support a claim of involuntariness based upon the allegation that he was under the influence of marijuana. The Defendant is focused and alert. There is no basis to conclude the Defendant's statement was involuntary due to marijuana consumption.

Defense counsel testified Mr. Warrington told him the police stated he could go home after he gave a statement, but defense counsel concluded an attack based on voluntariness didn't have legs. I agree. The tape of the statement evidences that the Defendant voluntarily talked with the detective. It evidences the detective's concern about the Defendant's comments about being cold as well as clearing up any ambivalence expressed

-5-

by the Defendant as to whether the Defendant wanted to talk with the detective. Both detectives deny they told the Defendant he could go home if or after he gave a statement. The Defendant then testified it must have been another police officer.

Both testified that they are homicide detectives and their practice is to make sure they capture all communications with a suspect on tape. Detective Evans testified he didn't think either he or Detective Hudson accompanied the Defendant from the cell block to the interview room. Thus, a real fact issue remains as to whether this comment by the police occurred, but even if such a comment was made, it doesn't automatically mean there is a basis for suppressing the statement. Defendant must establish his will was overborne by the police conduct. .....

The standard for determining voluntariness is if the "behavior of the interrogators was such as to overbear the will of the interrogated to resist and bring about a statement not 'the product of rational intellect and a free will' without regard to the truthfulness or reliability of the statements". State v. Rooks, 401 A.2d 943 (Del. 1979) at 948 quoting Rogers v. Richmond, 365 U. S. 534 (1961). Based upon this standard and a review of the tape of the statement, Defendant has not established any deficient performance as to his allegation that his attorney should have also attempted to suppress his statement on voluntariness grounds. Could the attorney have raised this? Yes, but when considering the evidence of the videotape and the demeanor of both the detective and the Defendant, I do not find counsel deficient for not seeking suppression as to voluntariness. Trial counsel considered the "right to counsel" argument as his best shot at suppressing the statement. When such judgments are made, the Courts shall be reluctant to second guess counsel's

-6-

tactics.

Nor has he established prejudice in that he has not shown that had such a motion been filed, it would have been granted. To the contrary, after hearing the Defendant's testimony, the detectives' testimony and considering the statement itself, I find I would not have suppressed the statement on the basis it was involuntary. This claim is denied.

## CLAIM #2 - SWEATSHIRT MIX-UP

Defendant alleges that the medical technicians called to the scene "mixed up" the sweatshirts that Robert Warrington and Andrew Warrington were wearing. He argues his attorney was ineffective in his pretrial investigation for not being aware of the "mix up". He argues this is relevant because there was blood on the back of the sweatshirt he was wearing, and that would have been relevant to his claim that he was the one who made the 911 call, not the victim.

This was a fact issue that was raised at trial and necessarily resolved by the jury. When trial counsel learned of Defendant's allegation that the sweatshirts had been mixed up is not as important as the fact that at trial, he was aware of it and this issue was thoroughly explored by trial counsel. Therefore, the Defendant can claim no prejudice. There is no basis for an ineffective assistance claim under these facts where it was the jury's decision as to whether or not there had been a mix-up; and if there was a mix-up, what was the relevance and weight of same.

I note that Mr. Warrington's claim that he made the 911 call is not at all credible. If he made the 911 call, then the deceit, shock and consternation shown by him upon getting the return call from the 911 operator is unexplainable. Immediately following Peco's

-7-

death, Mr. Warrington hung the phone up or broke the 911 connection. The 911 operator immediately called back. When asked what was happening, Mr. Warrington reported his brother was kidding around. He didn't report a home invasion and the death of the intruder. If he had made the call, why should he have been so deceptive? When Mr. Warrington then realized the 911 operator had heard what had taken place, his panic is obvious.

Defendant claims trial counsel was ineffective for not having blood testing done on the black sweatshirt he claims to have been wearing. This argument is not developed by the Defendant and it consists of a single sentence. I expect the Defendant is saying if blood was on the back of the shirt he was wearing, then it would support his argument that he was in the bedroom with his back to the door, and it was the victim that broke in. The large blood stains found on the door supported the inference that someone was using their back against the door to keep the door closed. The physical evidence supports Jesse Peco as wearing clothing which was sufficiently bloody so as to leave a large blood stain on the door.

Further, defense counsel testified that blood testing was never considered because of the Defendant's version of what occurred and the chronological order of those events. What little blood that might have gotten on the back of the Defendant's shirt and when it was transferred would not have warranted testing the shirt. Everyone knew there was an abundance of blood and it was the victim's.

As aforestated, who was wearing what shirt was explored by the defense and the State. The jury heard the Defendant's theory that he was the one with his back to the door. Regardless of any blood being on the shirt, the jury heard both sides. The jury also had the

-8-

black sweatshirt to review as it was a trial exhibit. Additionally, as a result of this claim, the Court has examined the sweatshirt and the "stains" on it do not support Defendant's allegation of a large blood transfer from his shirt to the door.

The timeline of events establishes that the Defendant's version of events is not credible. The evidence strongly supports the victim seeking refuge in the bedroom, trying to make a 911 call as the door was forcibly broken down by the Defendants. It supports the Defendant not having any knowledge of the 911 call until the 911 operator called back.

Finally, the Defendant doesn't offer any theory as to how testing the shirt for blood would support his theory that he was the one who sought refuge in the bedroom. It's conclusory. To have had an expert testify there was blood on Defendant's clothing would not have been surprising and would not have put the verdict in question. Thus Defendant fails to establish prejudice.

Defendant fails to establish deficient performance and prejudice. The claim is denied.

### CLAIM #4 - PSYCHIATRIC EVIDENCE

Defendant claims trial counsel was ineffective for failing to call an expert psychiatric witness at trial, or to have an expert prepare a "social history", which Defendant argues would have bolstered his self-defense argument. Self defense does focus on the Defendant's state of mind or belief at the time the Defendant commits an alleged criminal act. Defendant offers nothing as to what an expert would have offered to assist the jury. Defendant testified as to his state of mind and belief. The Defendant's brother corroborated their story.

Trial counsel testified he did consult with an expert, but after discussing the issue of

-9-

the Defendant's state of mind, it was decided the Defendant would be his own best witness. In other words, considering the resources available, there was a decision that retaining an expert as to the Defendant's state of mind was not justified under the known evidence.

Finally, there is nothing in the Rule 61 to support the allegation that such an expert would have supported the Defendant's present allegations and made a difference at trial. The only proffer is the Defendant's allegation that an expert would have helped.

This claim fails.

## CLAIM #5 - FINGERPRINT EVIDENCE

Defendant claims trial counsel was ineffective for failing to obtain an independent fingerprint expert. He alleges this would have been important to substantiate his claim that he made the 911 call as opposed to the victim. This was a fact issue at trial. The State presented its expert witnesses and the Defendants thoroughly cross-examined those experts. The fingerprint expert testified a single print was located on the portable telephone. Based on the identifying points found, the Defendants were excluded. The victim was not excluded because the examiner did not have sufficient prints of Mr. Peco in order to make a proper comparison. For the same reason, the expert testified he couldn't match the print to the victim. Issues such as whether or not prints could be matched to either of the Defendants or matched to the victim were explored. Robert Warrington's present allegation that there was ineffective assistance of counsel because no independent fingerprint expert was hired is a conclusory allegation. He offers nothing to support his claim that if a defense expert were involved, that expert could offer anything favorable to the defense which could put the jury's verdict in doubt. There is nothing offered to question the State's expert that neither

-10-

Defendant made the print found on the phone. At the Rule 61 hearing his trial attorney testified, based on what he knew, he couldn't see how such an expert would have helped. I agree. This claim is denied as neither deficient performance has been shown for not obtaining a defense fingerprint expert nor has there been a showing that such an expert would have supported Defendant's present allegations.

## CLAIM #6 - THE 911 TAPE (AUTHENTICITY)

It is claimed that counsel was ineffective for not having the 911 tape transcribed by an independent expert. Defense counsel testified he had the tape digitally enhanced and spent many hours reviewing it and the transcript of the tape. Implicit in the claim is that somehow the 911 transcript was inaccurate. Defendant has not established that. Additionally, I note that Andrew Warrington's attorney moved to suppress the 911 tape and transcript of same. After making their own defense inquiry, that suppression application was withdrawn as they had no basis to allege tampering. This conclusory claim is denied.

## CLAIM #7 - THE 911 TAPE (INFLAMMATORY)

Counsel is alleged to be ineffective for not objecting to the admission of the 911 tape as being inflammatory. Even if defense counsel had objected, the tape would have been admitted. The 911 tape accurately evidenced what took place at the scene of this homicide. It was chilling, but in no sense was it prejudicially inflammatory under D.R.E. 403. The Defendant has not established deficient performance or prejudice. This claim is denied.

## CLAIM #8 - NO PLEA BARGAIN

It is alleged that counsel was ineffective for failing to seek a plea bargain. Trial counsel testified there were plea discussions but they didn't bear fruit as to anything

-11-

acceptable to the Defendant. I do not find that counsel failed to explore resolution of the charges by way of plea negotiations. Therefore this claim is denied.

### CLAIM #9 - FRIENDLY RELATIONS WITH INVESTIGATOR

The Defendant alleges that his trial attorney told him that he was good friends with the investigating detective. He alleges that this created a conflict of interest and that his attorney's working relationship with the prosecution interfered in the attorney's obligation to provide a zealous defense. Trial counsel denies these specific allegations, but did testify he told the Defendant he knew the detective. Both trial counsel and the detective testified that they knew each other in high school. Detective Hudson graduated before trial counsel graduated, approximately 20 years ago. They haven't socialized since then. The knowledge of each other's cell phone numbers was based on exchanging same when arrangements were made for the Defendant to turn himself in. There has been no showing that trial counsel and the police officer were friends, much less that any friendship caused Defendant prejudice. This claim is denied.

### CLAIM #10 - COLD-BLOODED MURDERS

Defendant alleges that the comment by the prosecutor in his opening statement that the co-Defendants were "cold-blooded killers" was highly prejudicial and that his attorney was ineffective for failing to object to the prosecutor's comment. I do not find that the attorney was ineffective for not objecting to the statement. When taken in context, the use of "cold-blooded killers" was a part of the state's opening concerning the 911 tape. It was made in the context that the evidence would show the victim was helpless, begging for his life, but the only thing that was forthcoming was further violence inflicted upon the victim

-12-

with the knowledge such violence was causing death. In light of that context, the use of "cold-blooded killers" to show an intent to kill was not inappropriate. "Cold-blooded" means lack of feeling or emotion. I note that the Court reached the same conclusion at sentencing. Nor has the Defendant shown how he was prejudiced by the use of the term "cold-blooded killers". The jury was instructed that the lawyers were not witnesses and that any personal opinions they may have offered should not be considered. This claim is denied.

## CLAIM #11 - TATTOO

The Defendant argues his attorney should have objected to photos of his tattoo. The evidence doesn't support the allegation that Robert Warrington's tattoo was in any way exhibited to the jury. Assuming it was, the Defendant does not offer any explanation as to how his tattoo of a dragonhead would have been prejudicial. There is nothing inherently prejudicial about his tattoo. This claim fails as it is no allegation of deficient performance nor is it showing any prejudice.

## CLAIM #12 - COACHING

The Defendant argues that there was coaching by a prosecutor of a witness concerning whether Andrew Warrington was wearing the black sweatshirt or whether Robert Warrington was wearing the black sweatshirt. Defendant has no evidence to support such a claim. His trial counsel testified that if this had occurred, it would have surely been brought to the Court's attention. This conclusory claim fails.

## CLAIM #13 - Defendant'S PRIOR DRUG INVOLVEMENT

Defendant argues that his attorney was ineffective for asking him about prior criminal conduct that may have been otherwise inadmissible. The evidence shows that during the

-13-

Defendant's direct testimony, he testified about an arrest in Florida. Trial Counsel testified that it was necessary to paint the entire picture of Defendant's background. The defense had an uphill struggle to explain Defendant's dishonest statement to the police. To leave out something that may have possibly been raised in cross-examination, would have had a negative impact as to the Defendant's attempt to be credible in the jury's eyes. In these circumstances, I cannot fault defense counsel for trying to "take the wind out of the sails" of the prosecution. Defense counsel wanted the jury to form the opinion his client was being honest and he didn't want the appearance that he was holding anything back. In view of this, I do not find trial counsel's advice to his client to include the Florida arrest to be ineffective assistance of counsel. Nor do I find any prejudice. To provide the jury with the background of why this case occurred and why he was not guilty he testified fully as to using and selling drugs. Therefore, as a trial strategy, it was necessary for the Defendant to acknowledge prior criminal conduct. The Florida arrest pales when compared to the drug activity occurring in Delaware. This testimony was necessary to establish why the Defendant owed the victim money and why he feared the victim. This claim is denied.

### CLAIM #14 - FAILED TO OBJECT TO STATE'S VIGOROUS CROSS-EXAMINATION OF THE DEFENDANT

Defendant complains that his attorney was not aggressive enough in objecting to the prosecutor's cross-examination of him. To support this he states that the Court intervened at times and it should have been the defense attorney who intervened.

If the opposing attorney is trying to make a point through cross-examination and there is an objection, then it may appear to the jury that defense attorney is trying to

-14-

interrupt that questioning or protect his client. I don't find trial counsel was ineffective for not making objections. When to object and over what issues is best left to trial counsel.

A judge is permitted to control the proceedings. If questioning becomes cumulative and we are simply replowing old ground, it is within the discretion of the Court to get the parties to move along. Argumentative questions are likewise ripe for a judicial intervention. Just because a judge intervenes does not mean a lawyer is not doing his or her job.

Finally, there has been no showing of prejudice. This is not a situation that a missed objection caused prejudice to the Defendant. This ground is denied.

### CLAIM #15

The Defendant alleges that his attorney failed to cross-examine one of the detectives about "circumstances of the statement, or why the Defendants were released, or anything relevant due to being friends with the detective." This claim combines two earlier claims that a suppression application based upon an involuntary statement should have been made by trial counsel, together with the allegation that it was his attorney's friendship with the detective that caused him not to raise the issue. I have previously found no merit in these claims.

The Defendant offers nothing as to what would have been obtained had cross-examination been conducted in a different fashion. In fact, at the evidentiary hearing, the detective testified that both Warringtons were released, but that he wanted to arrest them instead. The detective testified it was the prosecutor who made the decision to release the Defendants as the prosecutor wanted further investigation. Therefore, I find that trial counsel was not deficient and I find there exists no prejudice as to this claim. It is

-15-

dismissed.

## CLAIM #16

The Defendant alleges that trial counsel failed to call witnesses which were prepared to testify as to the victim's reputation for violence.

Trial counsel testified the defense did raise the victim's prior violence as a justification for the use of self-defense. But trial counsel testified there were witnesses he chose not to call because of their opinion that the victim was basically all bark and no bite. He was concerned this would erode Defendant's testimony that there was real reason to fear the victim. Counsel didn't ignore these witnesses. He interviewed them and determined how helpful they might be and whether the benefit outweighed the risk of their testimony.

There is no basis to conclude trial counsel was deficient in not calling those witnesses nor has the Defendant offered anything to establish prejudice. The Defendant has not made any specific proffer nor does he have anything from any prospective witness that would be helpful to the position he now takes. In other words, his claims of prejudice are conclusory. This claim is denied.

## CLAIM #17 - MARIJUANA

Defendant alleges that trial counsel promoted Defendant to lie by omission about not mentioning he smoked marijuana prior to the homicide and about trial counsel's "best friend relationship" with the detective. Defendant argues that trial counsel told Defendant not to tell anybody he was on marijuana during the incident during his statement. Trial counsel denies these allegations and testified he asked the Defendant about drug usage prior to the homicide and the Defendant denied any consumption of drugs. He also testified that there

-16-

was no basis at all to the "best friend" allegations. I find that the Defendant has not established that his attorney directed that he lie by omission. This claim is denied.

## CLAIM #18

Defendant alleges the prosecutor, in closing argument, misstated the evidence as to the location of the fingerprint on the phone that was used to make the 911 call. There was testimony as to the fingerprint location and I don't find the prosecution misled the jury.

Defendant also alleges the prosecutor argued inferences that were not reasonable. The undisputed evidence was that the Defendant gave the victim a forged check for money he owed, but which needed the Defendant to cash. There was evidence that the Defendant and the victim were to meet in order to arrange for the cashing of this check. The State didn't mischaracterize the evidence or mislead the jury when it inferred it was reasonable for the victim to appear at the Defendants' house after they failed to meet as planned.

I do not find that the prosecutor's statements were a mischaracterization of the evidence. Therefore, I do not find that there was any ineffective assistance of counsel by not objecting to the prosecutor's remarks. Finally there has been no showing of prejudice. This claim is denied.

## CLAIM #19

In this claim, the Defendant makes the conclusory allegation that his attorney "gave a horrible closing argument" and that his trial performance was "bad strategy". Defense attorneys must sometimes attempt to "make a silver purse out of a sow's ear", but a guilty verdict doesn't mean counsel did a poor job. It is trial counsel's responsibility to do the best job he can and zealously defend the Defendant. I do not find that these allegations rise

-17-

to the level of a specific claim of deficient performance. I do not find the Defendant has established any prejudice. Just saying the word "prejudice" is insufficient. This claim is denied.

## CLAIM #20

In this claim, the Defendant argues the sum total of all the deficiencies of his attorney prejudiced him. Since I have not found any trial error or deficient performance by Defendant's attorney which prejudiced him the sum of the total is zero and therefore this claim is denied.

## CLAIM #21 - INSUFFICIENT EVIDENCE

Defendant alleges there was insufficient evidence to support a claim of murder in the first degree. Specifically, he alleges that the prosecution failed to establish his intent to kill. As to an intent to kill, the physical evidence is overwhelming that this incident, fight, or whatever, was one-sided. Each Defendant had one small cut. Mr. Peco had 8 blunt force injuries to his head. Mr. Peco had 25 knife wounds, 13 of which were determined to be stab wounds. He had numerous defensive wounds on his hands. The 911 tape is devastating proof. The Defendants were convicted based on the live recording of this homicide. The evidence and reasonable inferences offered are ample proof of the Defendant's intent to cause Mr. Peco's death. This claim fails.

## CLAIM #22 - FAULTY JURY INSTRUCTIONS

This claim alleges that the self-defense instructions were faulty. The self-defense instructions were the subject of the appeal and therefore there has been a prior adjudication of this issue. This claim is procedurally barred under Rule 61(i). As to that portion of this

-18-

allegation alleging the instructions resulted in the burden of proof being shifted to the defense, the Defendant is factually incorrect. The instructions make it clear that if self defense raises any reasonable doubt, the Defendant must be given the benefit of that doubt. In other words, the Defendant is not required to prove self defense. The instruction didn't cause the burden of proof to be shifted to the Defendant. This claim fails.

### CLAIM #23 - INEFFECTIVE ASSISTANCE OF COUNSEL - APPELLATE COUNSEL

Defendant claims that his appellate counsel failed to conduct the appeal to the best of his ability, alleging that he should have raised all of the aforementioned grounds included in this Rule 61. Based upon the rulings in this present application, I do not find appellate counsel to have been deficient for not raising the issues contained herein.

### CLAIM #24

The Defendant complains that he was denied copies of the trial transcripts until months after the conviction was affirmed. This claim doesn't attack his conviction.

Defendant makes no claim as to how this claim has prevented him from prosecuting his present motion. It would appear that Defendant has exhaustively reviewed all alleged errors and deficiencies that he feels contributed to his conviction. This claim is dismissed.

### CLAIM #25

The Defendant argues that the Court should have granted a change of venue. There is nothing to support this allegation. There is nothing shown by the Defendant which warrants a change in venue to Kent County or New Castle County. The complaint that there were efforts by the victim's family and/or supporters to influence a verdict by leaflets or

-19-

picketing would not have been eliminated by a change in venue. Such issues may arise wherever the trial takes place and must be addressed by the Court as they were in this case. Additionally, the Court regularly inquired of the jury as to whether they had been exposed to anything that might impact their ability to remain fair and impartial. This claim is denied.

CONCLUSION

The Defendant's Motion for Postconviction Relief is denied.

Yours very truly,

T. Henley Graves

THG:baj

cc:    James W. Adkins, Esquire
       Adam D. Gelof, Esquire
       David M. Hume, Esquire
       Ronald D. Phillips, Esquire

Law Offices

# Thomas David Hunter Barnett

512 East Market Street
Georgetown, Delaware 19947
E-mail: TDHBLawyer@aol.com

Telephone: (302)855-9252          Fax:   (302)855-9293
Cell Phone: (302)228-5568         Pager: (302)441-6567


March 25, 2003


**Robert W. Warrington**
**SBI# 00442182 Unit 21MHU AGU**
**Delaware Correctional Center**
**1181 Paddock Road**
**Smyrna, DE 19977**

**Dear Mr. Warrington:**

Enclosed is the latest correspondence from the Supreme Court of Delaware.  Should you have any questions, please do not hesitate to contact this office.


Very Truly Yours,


**Thomas D. H. Barnett**


**TDHB/jdb**

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. WARRINGTON | § | No. 72, 2002 |
| | § | Cr. ID No. 0008014970 |
| v. | § | |
| | § | |
| STATE OF DELAWARE | § | Consolidated with |
| | § | |
| | § | |
| ANDREW WARRINGTON | § | No. 74, 2002 |
| | § | Cr. ID No. 0008014979 |
| v. | § | |
| | § | Superior Court |
| STATE OF DELAWARE | § | |
| | § | Sussex County |

The following docket entries have been made in the above causes.


39/38.    March 3, 2003. Record and mandate to Clerk of Court
                   Below. Case Closed.


 cc:  The Honorable T. Henley Graves
      Thomas D. Barnett, Esquire
      Karl Haller, Esquire
      Kim E. Ayvazian, Esquire


                              Prothonotary
                              Received Above


                    By _____

                    Date _____


Date:   March 3, 2003          _____
                               Audrey F. Bacino, Assistant
                               Clerk of Supreme Court

IN THE SUPREME COURT OF THE STATE OF DELAWARE

ROBERT W. WARRINGTON,

   Defendant Below-
   Appellant,

   v.

STATE OF DELAWARE,

   Plaintiff Below-
   Appellee.

§
§ No. 41, 2005
§
§
§
§ Court Below—Superior Court
§ of the State of Delaware
§ in and for Sussex County
§ Cr.ID No. 0008014970
§
§
§

Submitted: November 4, 2005
Decided: January 24, 2006

Before **STEELE**, Chief Justice, **BERGER** and **JACOBS**, Justices

### O R D E R

This 24th day of January 2006, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1) The defendant-appellant, Robert W. Warrington, filed an appeal from the Superior Court's January 3, 2005 order denying his motion for postconviction relief pursuant to Superior Court Criminal Rule 61. We find no merit to the appeal. Accordingly, we AFFIRM.

(2) In November 2001, Warrington was found guilty by a Superior Court jury of Murder in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Conspiracy in the First Degree. He

was sentenced to life imprisonment plus 25 years. Warrington's convictions and sentences were affirmed by this Court on direct appeal.[1]

(3)    In this appeal, Warrington claims that: a) the Superior Court abused its discretion by failing to appoint counsel to represent him in the postconviction proceeding; b) his counsel provided ineffective assistance; c) his statement to police should have been suppressed; d) there was insufficient evidence presented at trial to support his convictions; e) the jury instructions were improper; and f) he was improperly denied transcripts of his counsel's opening and closing statements.

(4)    Warrington's first claim is that the Superior Court abused its discretion by refusing to appoint counsel to represent him in the postconviction proceeding.  A defendant does not have a right to the appointment of counsel in postconviction proceedings.[2]  Counsel will be appointed only for good cause shown.[3]  In this case, the Superior Court held an evidentiary hearing on Warrington's postconviction motion solely to clarify the nature of his claims.  Based upon the evidence presented, the Superior Court confirmed that there was no factual basis for any of Warrington's claims. In the absence of a showing of "good cause," we find

---

[1] *Warrington v. State*, 840 A.2d 590 (Del. 2003).

[2] *Cropper v. State*, Del. Supr., No. 309, 2001, Walsh, J. (Dec. 10, 2001) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).

[3] Super. Ct. Crim. R. 61(e) (1).

2

that the Superior Court acted within its discretion in determining that there was no need to appoint counsel for Warrington in that proceeding.

(5)    Warrington's second claim is that his trial counsel provided ineffective assistance. In order to prevail on this claim, Warrington must demonstrate that his counsel's representation fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[4]   Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."[5]   Our review of the record does not support Warrington's claim of ineffective assistance. He has not demonstrated that any alleged error on the part of his counsel resulted in prejudice to him.

(6)    Warrington's next claim is that his statement to the police should have been suppressed. Specifically, he argues that he was under the influence of marijuana and felt coerced when he gave his statement to the police. Because this claim was never raised in the proceedings leading to the judgment of conviction, it is barred[6] unless Warrington can establish

---

[4] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[5] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

[6] Super. Ct. Crim. R. 61(i) (3).

3

cause for the procedural default and prejudice.[7]  Warrington has failed to overcome the procedural bar.  Our review of the record in this case reveals no evidence of coercion and no evidence to support his claim.

(7)    Warrington's next claim, which he also raises for the first time in this proceeding, is that there was insufficient evidence presented at trial to support his convictions.    In reviewing a claim of insufficiency of the evidence, this Court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[8]  In so doing, we make no distinction between direct and circumstantial evidence.[9] Moreover, it is for the jury to weigh the relative credibility of the witnesses and reconcile any conflicting testimony.[10]  The record in this case reflects that there was ample evidence presented at trial to support Warrington's convictions of Murder in the First Degree,[11] Possession of a Deadly Weapon During the Commission of a Felony,[12] and Conspiracy in the First Degree.[13]

---

[7] Super. Ct. Crim. R. 61(i) (3) (A) and (B).
[8] *Barnett v. State*, 691 A.2d 614, 618 (Del. 1997).
[9] *Skinner v. State*, 575 A.2d 1108, 1121 (Del. 1990).
[10] *Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992).
[11] Del. Code Ann. tit. 11, § 636.
[12] Del. Code Ann. tit. 11, § 1447.
[13] Del. Code Ann. tit. 11, § 513.

4

In the absence of any evidence of cause and prejudice,[14] this claim, too, is procedurally barred.

(8)    Warrington's next claim is that the instructions given to the jury were faulty. To the extent this claim is different from the issue decided by this Court in Warrington's direct appeal,[15] it is barred as procedurally defaulted.[16] To the extent this claim is the same as the issue decided by this Court in Warrington's direct appeal, it is barred as formerly adjudicated.[17] Moreover, Warrington has presented no evidence to overcome the procedural bars.[18] The record reflects that the Superior Court properly instructed the jury on self-defense as well as the State's burden of proof beyond a reasonable doubt[19] and that there was no prejudice to Warrington.

(9)    Warrington's final claim is that he was improperly denied transcripts of his counsel's opening and closing statements. The record reflects that approximately one year prior to filing his postconviction motion, Warrington requested the Superior Court to provide him with trial transcripts at State expense. The Superior Court denied his request, but stated that the request could be raised again when the postconviction motion

---

[14] Super. Ct. Crim. R. 61(i) (3) (A) and (B).

[15] *Warrington v. State*, 840 A.2d 590 (Del. 2003) (holding that the trial court gave a correct instruction on the Delaware law concerning self-defense within a dwelling).

[16] Super. Ct. Crim. R. 61(i) (3).

[17] Super. Ct. Crim. R. 61(i) (4).

[18] Super. Ct. Crim. R. 61(i) (3) (A) and (B); Super. Ct. Crim. R. 61(i) (4).

[19] *Thompson v. State*, 610 A.2d 727 (Del. 1992).

5

was filed. When Warrington filed his postconviction motion, he did not renew his request for trial transcripts.[20] Absent a showing of a particularized need for a transcript, the Superior Court is within its discretion to deny a motion for a transcript at State expense.[21] We find no abuse of discretion on the part of the Superior Court with regard to Warrington's request for transcripts and no factual support for Warrington's claim that his request for transcripts was improperly denied.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

_Carolyn Berger_
Justice

---

[20] Warrington later requested a copy of the transcript of the evidentiary hearing in conjunction with the instant appeal and the Superior Court granted his request.
[21] *Freeman v. State*, 820 A.2d 371 (Del. 2003).

6

K. U.S. DIST
TRICT OF DELAWARE

Office of the Clerk
U.S. District
844 N. King St., Lockbox 18
Wilmington, DE
19801

IM Robert W. Warington
SBI# 00442182 UNIT
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

U.S.M.S.
X-RAY

Legal Mail