## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ROBERT W. WARRINGTON,    :
    :
    Petitioner,    :
    :+
    v.    :    Civ. Act. No. 06-67-SLR
    :
THOMAS L. CARROLL,    :
Warden, and CARL C. DANBERG,    :
Attorney General for the State of Delaware, :
    :
    Respondents.    :

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In September 2000, the petitioner, Robert Warrington ("Warrington"), and his brother, Andrew Warrington, were arrested, and the two were subsequently indicted on charges of first degree murder, two weapons offenses, and first degree conspiracy. *See* Del. Super. Ct. Crim. Dkt. Items 1 & 2 in case no. 0008014970. In November 2001, both Warrington brothers were found guilty by a Superior Court jury of first degree murder, possession of a deadly weapon during the commission of a felony, and first degree conspiracy; the jury acquitted them of a second charge of possession of a deadly weapon during the commission of a felony. *Warrington v. State*, 2006 WL 196433, *1 (Del. Jan. 24, 2006). Warrington was sentenced to life imprisonment plus twenty-five years. *Id.* Warrington's convictions and sentence were affirmed on direct appeal. *Warrington v. State*, 840 A.2d 590 (Del. 2003).

In March 2003, Warrington moved for postconviction relief under Superior Court Criminal Rule 61. In January 2005, after consideration of defense counsel's response, the

prosecution's answer and an evidentiary hearing, Superior Court denied Warrington's

postconviction motion and Warrington appealed. *See Warrington*, 2006 WL 196433 at *1. The

Delaware Supreme Court affirmed the decision of the Superior Court on January 24, 2006. *Id.*

Facts

As detailed by the Delaware Supreme Court in *Warrington v. State*, 840 A.2d 590, 591

(Del. 2003), the facts leading to Warrington's arrest and conviction are as follows:

> Robert Wesley Warrington ("Wes"), then 22, and Andrew Warrington ("Drew"),
> then 18, are brothers who lived with their father at 100 Port Lewes in Sussex
> County. Wes owed an acquaintance, Jesse Pecco, approximately $800 for drugs
> that Wes had consumed instead of selling. In order to partially repay the debt,
> Wes forged a check from his father's bank account, making it out to himself in the
> amount of $700. Wes gave the check to Pecco on Friday, August 11, 2000, and
> the two men agreed to meet on Monday to cash the check.
>
> Pecco did not go to the meeting place. Instead, he drove to 100 Port Lewes, and
> parked his car directly behind Wes's car so as to immobilize it. Pecco then
> entered the dwelling through its unlocked front door. Drew, who was upstairs
> watching television, heard shouts coming from the first floor. When he went
> downstairs to see what was happening, he found Pecco involved in a physical
> struggle with Wes. Drew soon realized that the two were fighting over control of
> a knife that Pecco was holding. Drew struck Pecco from behind, causing him to
> release the knife. According to Wes, Pecco then had the opportunity to leave the
> house, but instead chased Drew, who had fled up the stairs. Both brothers
> maintain that Pecco was the aggressor in the fight, and that they believed he posed
> a threat.
>
> The two brothers testified that they gained the upper hand as Wes stabbed Pecco
> repeatedly with the knife and Drew struck him repeatedly with a fireplace poker.
> Ultimately it was determined that Pecco sustained 13 stab wounds, including one
> that penetrated his left lung, and one that penetrated his heart. Expert testimony at
> trial revealed that he also suffered eight blunt-force blows to the head, causing a
> fractured skull and subdural hemorrhaging. Among Pecco's injuries were deep
> incise stabs to his hands, characteristic of defensive wounds.
>
> During the altercation, a 911 call was made from the Warrington residence. DNA
> from blood marks found on the telephone used to make the call matched Pecco's
> DNA. One of these marks was located next to the "one" button on the telephone,
> indicating that it was Pecco who dialed the emergency number. Drew gave a
> conflicting account, saying that it was he who dialed the number, only to have
> Pecco knock the phone from his hands. The jury listened to the sounds of the

fight, as recorded on the 911 tape, before reaching its conclusion regarding self-defense. The tape revealed that, towards the end of the fight, Pecco was pleading with the brothers to stop attacking him. He asked, "Why are you guys trying to kill me?" to which one of the brothers responded, "good reasons." As he died, Pecco said, "Wes, show me some love. Give me a hug before I die. Give me a hug." Testimony demonstrated that Drew responded by kicking him in the face and telling him to shut up.

## Discussion

In his petition for federal habeas relief, Warrington raises five grounds for relief: (1) his trial and appellate counsel (Warrington had a new attorney appointed after trial, but prior to sentencing) both provided ineffective assistance for a variety of reasons (D.I. 1 at 6; D.I. 6 at 11-12); (2) his conviction was obtained by use of a statement elicited in violation of due process (D.I. 1 at 7; D.I. 6 at 13); (3) there was insufficient evidence presented at trial to support his first degree murder conviction (D.I. 1 at 9; D.I. 6 at 14); (4) the jury was improperly instructed as to defense in one's own home (D.I. 1 at 11; D.I. 6 at 15); and (5) he was improperly denied counsel at the postconviction evidentiary hearing (D.I. 1 at 13; D.I. 6 at 16).

*Claim 1 – Ineffective assistance of trial and appellate counsel*

A state petitioner seeking federal habeas relief must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Alston v. Redman*, 34 F.3d 1237, 1241-42 (3d Cir. 1994). Warrington presented the following claims of ineffective assistance of counsel to the Delaware Supreme Court on appeal from the denial of his state postconviction motion, thus exhausting these claims: trial counsel failed to successfully have Warrington's statement suppressed; trial counsel failed to investigate and have a sweatshirt tested for blood; trial counsel failed to object to the prosecutor's description of the brothers as "cold blooded killers" during opening statements; trial counsel failed to object to an "altered" 911

3

tape, photographs of Warrington's tattoo, the "coaching" of a prosecution witness, and improper remarks regarding the blood evidence on the telephone made by the prosecutor in closing remarks; trial counsel should have cross-examined Detective Hudson and failed to disclose counsel's close relationship with Hudson; trial counsel failed to call prepared witnesses; trial counsel advised Warrington to testify about his prior felony, but to omit any reference to smoking marijuana; and appellate counsel just signed the co-defendant's counsel's brief.[1]  *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984).  These claims, however, do not provide a basis for relief.

Section 104 of Title I of the Antiterrorism and Effective Death Penalty Act of 1996, codified as 28 U.S.C. § 2254, restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court.  As amended, § 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] Warrington also complains that his trial counsel failed to file motions to sever the defendants and for a change of venue. Those claims were not presented to the state supreme court, and are thus unexhausted. *See Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). Because Warrington would be procedurally barred from raising these claims in a second state postconviction motion (Del. Super. Ct. Crim. R. 61(i)(2)), however, exhaustion is excused. *See Teague v. Lane*, 489 U.S. 288, 298 (1989). Nevertheless, federal habeas review of the claims is barred unless Warrington establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). The record reveals, however, that trial counsel filed motions to sever the defendants and for a change of venue. *See* Del. Super. Ct. Crim. Dkt. Items 20 & 22 in case no. 0008014970. Thus, these claims are simply without any basis and must be dismissed.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998). "A state court decision is contrary to Supreme Court precedent under § 2254(d)(1) where the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005) (citations and internal quotations omitted). A state court decision is an unreasonable application if the court identifies the correct governing legal rule based on Supreme Court precedent but unreasonably applies it to the facts of the particular case. *Id.* (citations omitted). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001).

The clearly established federal law which governs ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). In *Strickland*, the United States Supreme Court articulated a two-part test for evaluating an ineffective assistance of counsel claim. First, a petitioner must demonstrate that counsel's performance at trial or on appeal fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In evaluating whether counsel performed reasonably, a court "must be highly deferential." *Id.* at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted). Second, a petitioner must illustrate that counsel's ineffective performance caused prejudice. See *Strickland*, 466 U.S. at 687. In order to demonstrate prejudice, the petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty, but would have insisted on proceeding to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In this case, the Delaware state courts correctly identified the two-prong *Strickland* standard applicable to Warrington's ineffectiveness claims. Thus the state supreme court's denial of the claims was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406; *Jacobs*, 395 F.3d at 100.

Moreover, the state courts reasonably applied the rule to the specific facts of Warrington's case. *See* 28 U.S.C. § 2254(d)(1). In the first instance, Warrington asserts his trial attorney was ineffective in failing to have Warrington's statement suppressed. D.I. 6 at 11. Trial counsel moved to have the statement suppressed on the basis that Warrington requested counsel during the police interview and therefore the interview should have terminated at that time. *State v. Warrington*, ID No. 0008014970, letter op. at 4 (Del. Super. Ct. Jan.3, 2005). The trial court

6

rejected that motion, finding that follow-up questions by the police indicated that Warrington wanted to proceed without counsel. *See id.* Warrington asserts now, as he did in his state postconviction motion, that trial counsel should have sought to have the statement suppressed as involuntary. The record reveals, however, that during the interview the police detective responded to Warrington's complaint that he was cold by offering to provide him with blankets. *See State's Appendix* at B177-78, in Del. Supr. Ct. No. 41, 2005. As to Warrington's contention that he was under the influence of marijuana at the time of the statement, trial counsel testified at the evidentiary hearing that Warrington had specifically informed him that he did not smoke marijuana, and the first time counsel had heard of this claim was when he read Warrington's postconviction motion. *See State's Appendix* at B171, 221, in Del. Supr. Ct. No. 41, 2005; *Warrington*, letter op. at 5. The police detective testified that Warrington did not appear to be under the influence. *Warrington*, letter op. at 5. Further, trial counsel stated that he had reviewed the tape of the interview and had seen no basis upon which to move for suppression based on coercion. *See State's Appendix* at B172-73, in Del. Supr. Ct. No. 41, 2005. The trial court agreed, as did the state supreme court. As noted by the trial court, defense counsel could have raised the voluntariness claim, but would not have succeeded. *Warrington*, letter op. at 5; *See Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000) ("counsel cannot be deemed ineffective for failing to raise a meritless claim"). Moreover, viewed under the *Strickland* standard, the court would not second guess counsel's strategic decision that the right to counsel claim had the greatest potential for success. *Warrington*, letter op. at 6. Based on the record, the state court's determination that Warrington had not demonstrated that his trial counsel was constitutionally ineffective was not an unreasonable application of the *Strickland* framework.

Warrington complains that his trial counsel failed to investigate the sweatshirts the two brothers were wearing and he failed to have the sweatshirt Warrington was wearing tested for blood. D.I. 6 at 11. At the postconviction evidentiary hearing, defense counsel testified that he was aware of Warrington's concern that the sweatshirts had been "mixed-up" and he cross-examined at trial the police officer who had collected the evidence. *See State's Appendix* at B183-84, in Del. Supr. Ct. No. 41, 2005. Further, trial counsel testified that testing the blood stains would not served any purpose because the stains would all have belonged to the victim and could not prove that Warrington had transferred blood from the sweatshirt to the door in a way that supported his version of events. *Id.* at B185-87. As a result, the state court found that Warrington had failed to establish any prejudice resulting from the alleged failure of his trial counsel to test the bloodstains on the sweatshirt. *Warrington*, letter op. at 7-9. That conclusion was a reasonable application of the *Strickland* standard to the facts of this case.

The trial court also rejected Warrington's claim that trial counsel was ineffective in failing to object to the use of the phrase "cold-blooded killers" during the state prosecutor's opening statement. The trial court noted that the phrase was used in the context of describing what the 911 tape would reveal – a helpless victim begging for his life, only to be subjected to further violence. *Warrington*, letter op. at 12-13. The court found that defense counsel's decision not to object was reasonable in light of what the evidence would show. *Id.* Further, the court found that Warrington had failed to demonstrate any prejudice as a result of the comment as the jury was instructed that any opinions offered by the lawyers was not evidence and should not be considered. *Id.* at 13. Having properly analyzed the facts under the strictures of *Strickland*, the state court's holding that Warrington had failed to establish either the performance or the prejudice prong was a reasonable application of that standard.

Next, Warrington contends that his trial counsel should have objected to the admission into evidence of an "altered" 911 tape. D.I. 6 at 11. At the postconviction evidentiary hearing, however, Warrington's counsel testified that he had the tape digitally enhanced and spent many hours reviewing it and the transcript of the tape. *See State's Appendix* at B172-73, in Del. Supr. Ct. No. 41, 2005. There is no evidence in the record that the tape was altered or tampered with. In fact, Warrington's co-defendant moved to suppress the tape on that basis but later withdrew the motion as there was no basis to allege tampering. *See Warrington*, letter op. at 11. Because Warrington failed to show any basis for his claim that the tape had been altered, he cannot sustain a claim that his counsel was ineffective for failing to object on that basis. Thus, the state court's conclusion that this claim was wholly conclusory was a reasonable application of *Strickland*.

Further, the state court denied Warrington's claim that his trial counsel was ineffective for failing to object to photographs of Warrington's tattoo. The trial court noted that there was no evidence that the jury was shown Warrington's dragonhead tattoo. *Warrington*, letter op. at 13. Further, the state court found that Warrington had failed to establish prejudice, as there was nothing inherently prejudicial about a dragonhead tattoo even if the jury had seen it. *Id.* The state court's determination that Warrington had failed to show either deficient performance or prejudice is a reasonable application of *Strickland* to the facts of this case.

Similarly, the state court found that there was no basis for Warrington's claim that his counsel should have objected to coaching of a witness by a prosecutor concerning who was wearing the black sweatshirt. The state court rejected this claim as conclusory. *Warrington*, letter op. at 13. Without a basis in the record for the claim, the state court properly denied Warrington's claim under *Strickland*.

Warrington also alleges that the prosecutor improperly stated during closing remarks that a smudge was found above the number "one" on the telephone rather than above the "three," and his trial counsel failed to object. D.I. 6 at 12. At trial, a forensic DNA expert testified that he had examined three stains on the telephone – one stain from the area in between the "one" and "four" button, another stain on the top of the phone, and a third from the base of the phone. *See State's Appendix* at B48-51, in Del. Supr. Ct. No. 41, 2005. In his closing argument, the prosecutor referred to a fingerprint found "right in that general area, right by the one on the phone." *Id.* at B128. The state court found that the prosecutor had not mischaracterized the evidence or misled the jury, and thus trial counsel was not deficient in not objecting to the prosecutor's remarks. *Warrington*, letter op. at 17. Further, the court found no prejudice as a result of the remarks. *Id.* Warrington having failed to demonstrate either prong of the *Strickland* test, the state court correctly rejected this claim.

Warrington also complains that his trial counsel failed to cross-examine Detective Hudson and failed to disclose counsel's close relationship with Hudson. D.I. 6 at 11-12. At the postconviction evidentiary hearing, both trial counsel and Hudson denied any social relationship between them that would have impacted on their professional conduct and integrity. *See State's Appendix* at B203-208, in Del. Supr. Ct. No. 41, 2005. Moreover, the trial court found that Warrington offered "nothing as to what would have been obtained had cross-examination been conducted in a different fashion." *Warrington*, letter op at 15. Consequently, the state court found that trial counsel's performance was not deficient and no prejudice devolved to Warrington as a result of counsel's actions or inaction. This result squares with the *Strickland* paradigm. *See Strickland*, 466 U.S. at 692 ("Prejudice is presumed only if the defendant demonstrates that

counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'") (citing *Cuyler v. Sullivan*, 445 U.S. 335, 350, 348 (1980)).

In another claim, Warrington asserts that his trial counsel was ineffective in failing to call prepared witnesses to testify at trial. D.I. 6 at 12. At the postconviction evidentiary hearing, trial counsel testified that he elected not to call some witnesses because they believed that the victim was "all bark and no bite" – a characterization that would have detracted from the defense. *See State's Appendix* at B217-20, 242-49, in Del. Supr. Ct. No. 41, 2005. Warrington made no proffer to the state court (and makes none now) as to what these "prepared witnesses" would have testified at trial. *See Warrington*, letter op. at 16. Thus, Warrington failed to demonstrate that his trial counsel's strategic decision not to call certain witnesses was either deficient or prejudicial under *Strickland*.

Warrington alleges that his trial counsel advised him to lie by omitting mention that he smoked marijuana prior to the murder. D.I. 6 at 12. In contrast, Warrington complains that trial counsel also advised him to tell the jury about his prior conviction for possession of marijuana. D.I. 6 at 11. In the first instance, trial counsel testified at the postconviction evidentiary hearing that he specifically asked his client about drug use prior to the homicide and Warrington denied any consumption of drugs. *Warrington*, letter op. at 16. As to Warrington's prior conviction, trial counsel testified that he wanted Warrington to appear honest and forthcoming. *See State's Appendix* at B214, in Del. Supr. Ct. No. 41, 2005. Trial counsel wanted to set the stage to show why Warrington owed the victim money (drug money) and why he feared the victim. *See Warrington*, letter op. at 14. The jury was instructed that it should not view any of the defendant's prior bad acts as proof of the defendant's bad character or propensity to commit the charged offense. *See State's Appendix* at B122-23, in Del. Supr. Ct. No. 41, 2005. In light of the

11

defense trial strategy, the state court found that trial counsel's decision to have Warrington testify as to his prior drug involvement to "take the wind out of the sails" of the prosecution was professionally reasonable. *Warrington*, letter op. at 14. Further, the state court found no prejudice as a result of this testimony. Thus, the state court properly applied the *Strickland* test in denying this claim for relief.

Finally, Warrington alleges that his appellate counsel "failed to do anything but sign his name to the brief prepared by co-defendant's counsel." D.I. 6 at 12. Reading this claim in conjunction with the claims raised in state court, it appears that Warrington asserts that his appellate counsel should have raised all of the grounds raised by Warrington in his state postconviction motion. *See Jones v. Barnes*, 463 U.S. 745 (1983) (appellate counsel need not raise every non-frivolous claim). Because, as noted by the Superior Court, Warrington's postconviction claims were not meritorious, Warrington could not demonstrate either deficient performance or resulting prejudice. *Warrington*, letter op. at 19. *See also Warrington*, 2006 WL 196433 at *1-2 (finding no merit to procedurally defaulted claims). Thus, the state court's rejection of Warrington's claim of ineffective assistance of appellate counsel was a reasonable application of *Strickland. See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (*Strickland* is proper standard for evaluating effectiveness of appellate counsel).

*Claim 2 – Due process violation*

Warrington contends that he was under the influence of marijuana and held naked and freezing in a basement before giving a statement to police. D.I. 6 at 13. Warrington asserts that he was promised clothes if he would provide a statement, and that because he feared torture, his statement was coerced. *Id.* This claim was presented to the state supreme court on appeal from the denial of Warrington's postconviction motion, and is therefore exhausted. *See Digmon*, 434

U.S. at 333-34; *Swanger*, 750 F.2d at 295. After finding that a petitioner has exhausted state remedies, however, this Court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer*, 864 F.2d 306, 310 (3d Cir. 1989). As to this claim, Warrington did not comply with state procedural requirements. Warrington presented his claim of a coerced statement in his postconviction motion without having presented the issue on direct appeal. Under Superior Court Criminal Rule 61(i)(3), any ground for relief that was not asserted in the proceedings leading to the judgment of conviction is thereafter barred unless the petitioner shows cause for the procedural default and actual prejudice. The Delaware Supreme Court found no abuse of discretion in the trial court's finding this claim to be procedurally barred.[2] *See Warrington*, 2006 WL 196433 at *1. Warrington, having failed to comply with Criminal Rule 61(i)(3), failed to comply with the relevant state procedural requirements. *See Lawrie v. Snyder*, 9 F. Supp.2d 428, 451 (D. Del. 1998); *Flamer v. Chaffinch*, 827 F. Supp. 1079, 1087-88 (D. Del. 1993) (finding that Criminal Rule 61(i)(3) is an adequate state ground to preclude federal habeas review), *aff'd*, 68 F.3d 710 (3d Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1088 (1996). Thus, federal habeas review of this claim is barred unless Warrington establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992); *Dawson v. Snyder*, 988 F. Supp. 783, 804-05 (D. Del. 1997); *Johnson v. Ellingsworth*, 783 F. Supp. 215, 218-21 (D. Del. 1992).

---

[2] The Delaware Supreme Court also rejected this claim as meritless. *Warrington*, 2006 WL 196433 at *1. As long as the state court explicitly invokes "a state procedural bar rule as a separate basis for decision," an alternate holding on the merits does not preclude a federal habeas court from finding the claim procedurally barred on the basis of an independent and adequate state procedural ground. *Johnson v. Pinchak*, 392 F.3d 551, 558 (3d Cir. 2004); *United States* ex rel. *Caruso v. Zelinsky*, 689 F.2d 435, 440 (3d Cir. 1982).

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 487 (1986); *Dawson*, 988 F. Supp. at 805. To establish prejudice under the cause and prejudice standard, a petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 179 (1982); *Dawson*, 988 F. Supp. at 804-05.

Warrington has alleged ineffective assistance of trial counsel as cause for his failure to raise this issue at trial. As noted *supra*, Warrington presented his claim that his trial counsel was ineffective regarding the suppression of his statement to the state supreme court on appeal from the denial of his postconviction motion. *See Carrier*, 477 U.S. at 488-89 (an allegation of constitutionally ineffective assistance of counsel as cause for a procedural default in a state court must itself be independently exhausted). The state court rejected Warrington's claim that his counsel should have argued that his statement was involuntary, finding no basis in the record for such a claim. *See Warrington*, 2006 WL 196433 at *1; *State v. Warrington*, ID No. 0008014970, Graves, J., letter order at 4-7 (Del. Super. Ct. Jan. 3, 2005) (attached as Exhibit B to *State's Answering Brief* in Del. Supr., No. 41, 2005). Because Warrington cannot establish cause, his claim must be dismissed.

*Claim 3 – Insufficient evidence*

In his third claim, Warrington asserts that there was insufficient evidence presented at trial to convict him of first degree murder because there was no evidence that he intended to kill Pecco. D.I. 6 at 14. Warrington presented this claim to the state supreme court on appeal from

the denial of his postconviction motion, thus exhausting the claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Warrington, however, failed to raise this claim on direct appeal, and thus the claim was procedurally barred under Criminal Rule 61(i)(3) for failure to have raised the claim during the proceedings leading to the judgment of conviction. As a result, federal habeas review of this claim is barred unless Warrington establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman*, 501 U.S. at 750-51; *Caswell*, 953 F.2d at 861-62; *Dawson*, 988 F. Supp. at 804-05; *Ellingsworth*, 783 F. Supp. at 218-21. To the extent that Warrington has alleged ineffective assistance of counsel as cause for his failure to raise this issue on direct appeal, that claim was also rejected by the state courts. Moreover, the Delaware Supreme Court, considering the claim under the standards of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), found that "there was ample evidence presented at trial to support Warrington's convictions of Murder in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Conspiracy in the First Degree." *Warrington*, 2006 WL 196433 at *2. Thus, had Warrington's counsel raised this claim either at trial or on appeal, the claim would not have been successful, and thus Warrington cannot demonstrate prejudice. Because Warrington cannot establish cause or prejudice to overcome his procedural default in state court, his claim must be dismissed.

*Claim 4 – Jury instructions*

Next, Warrington complains that the court improperly instructed the jury regarding defense in one's own home. D.I. 6 at 15. Warrington raised this claim on direct appeal from his conviction, thus exhausting the claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Warrington, however, only advances a state law claim, and federal habeas review of the issue is unavailable. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991);

*Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Taylor*, 277 F.3d 261, 310 n. 8 (3d Cir. 2001); *Guinn v. Carroll*, 2004 WL 758350, \*1 (D. Del.). The Delaware Supreme Court determined that the trial court's instructions to the jury concerning the limitation on the defense of self-defense within a dwelling correctly stated the law. *Warrington*, 840 A.2d at 593-94. "State courts are the ultimate expositors of state law . . . ." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *accord Lambert v. Blackwell*, 387 F.3d 210, 239 n.24 (3d Cir. 2004); *Humanik v. Beyer*, 871 F.2d 432, 436 (3d Cir. 1989). A habeas petitioner challenging state jury instructions must demonstrate that the jury instructions deprived him of a defense which federal law provided to him. *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Warrington has made no showing that federal law provides justification for the use of deadly force applicable to his actions in this case. *See id.* As a result, Warrington's claim does not rise to the level of a federal constitutional claim, and his state law claim is not cognizable in federal habeas review. *See Oliver v. Hendricks*, 2006 WL 1540823, \*4-5 (D.N.J. May 31, 2006).

### Claim 5 – Denial of counsel at postconviction hearing

In his final claim, Warrington asserts that he was improperly denied appointed counsel at his postconviction evidentiary hearing. Without question, Warrington had no right to counsel in the state postconviction proceedings. *Murray v. Giarratano*, 492 U.S. 1, 7-9 (1989) (plurality); *Pennsylvania v. Finley*, 481 U.S. 551, 555-57 (1987). Moreover, claims of error in state postconviction proceedings are collateral to the conviction and sentence, and do not give rise to a claim for federal habeas relief. *See Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2005) (quoting *Hassine v. Zimmerman*, 160 F.3d 941, 954-55 (3d Cir. 1998)). Because, under settled law, Warrington's complaint that he was denied appointed counsel at his postconviction

evidentiary hearing does not describe constitutional error, he is not entitled to authorization under § 2254(b) as to this claim.

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Warrington's status conference (June 22, 2001), trial (Nov. 5-27, 2001), sentencing (Jan. 18, 2002), and postconviction evidentiary hearing (Oct. 28, 2004 & Dec. 9, 2004) have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Del. Bar. ID No. 3759
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
elizabeth.mcfarlan@state.de.us

Date: June 29, 2006



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 758350 (D.Del.)
**(Cite as: 2004 WL 758350 (D.Del.))**

Page 1

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Kenneth L. GUINN, Petitioner,
v.
Thomas L. CARROLL, Warden, Respondent.
**No. Civ.A. 03-524-JJF.**

Feb. 24, 2004.
Kenneth L. Guinn, Petitioner, pro se.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for Respondent.

*MEMORANDUM OPINION*
FARNAN, J.

I. INTRODUCTION

*1 Petitioner Kenneth L. Guinn is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the Court is Petitioner's application for a writ of **habeas** corpus pursuant to 28 U.S.C. § 2254, and a Motion for the Appointment of Counsel. (D.I.2, 3.) For the reasons that follow, the Court concludes that Petitioner's **habeas** petition does **not** assert a **claim cognizable** on **federal habeas** review. Accordingly, the Court will deny his petition without reaching the merits of his **claim**, and deny his Motion for the Appointment of Counsel as moot. (D.I.s 2, 3.)

II. BACKGROUND

On February 8, 2000, Petitioner pled guilty to one count of aggravated menacing (11 DEL. C. ANN. § 602(b)) and one count of possession of a firearm by a person prohibited (11 DEL. C. ANN. § 1148). The Delaware Superior Court sentenced him to a total of five years incarceration on the aggravated menacing, and three years imprisonment on the weapons offense, to be suspended for decreasing levels of probation. State prosecutors entered a nolle prosequi on the remaining counts in the indictment.

Petitioner did not appeal his conviction or sentence, nor did he apply for state post-conviction relief. However, Petitioner did file at least two *pro se* Motions for the Modification or Reduction of Sentence. [FN1] The Superior Court denied these Motions, and Petitioner has never appealed any of these denials to the Delaware Supreme Court. (D.I.s 2,15,16.)

> FN1. Petitioner attached a copy of a Motion for Modification of Sentence dated December 20, 2000 to his habeas petition. He also attached a copy of a Delaware Superior Court Order, dated April 30, 2003, denying a Motion for Modification of Sentence for being repetitive. (D.I.2, Attachments.) In his "Reply to Respondent's Answer," Petitioner appears to allege that he followed the advice of counsel in waiting to file a Motion for Reduction or Modification of Sentence. (D.I.16.) Petitioner attached copies of correspondence with the Superior Court, his June 18, 2002 Motion for Reduction of Sentence, and the Superior Court's November 7, 2001 Order denying his Motion. *Id.*

On May 30, 2003, Petitioner filed the federal habeas petition currently before the Court. Reading the petition in conjunction with Petitioner's "Reply to Respondent['s] Answer," Petitioner appears to challenge the Delaware Superior Court's denial of his first Motion for Modification of Sentence for being time-barred. (D.I.16.)

Respondent has filed an Answer asking the Court to dismiss Petitioner's **federal habeas claim** for failure to assert a **claim cognizable** on **federal habeas** review.

Petitioner's **federal habeas** petition is now ripe for review.

III. DISCUSSION

A **federal** district court may consider a **habeas** petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or **laws** or treaties of the United States." 28 U.S.C. § 2254(a). **Claims** based on errors of **state law** are **not cognizable** on **federal habeas** review.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                          Page 2
Not Reported in F.Supp.2d, 2004 WL 758350 (D.Del.)
**(Cite as: 2004 WL 758350 (D.Del.))**

*Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Riley v. Harris,* 277 F.3d 261, 310 n. 8 (3d Cir.2001). Moreover, "**habeas** corpus relief is **not** available when a prisoner challenges errors in state postconviction procedures ." *Ferguson v. State,* 1996 WL 1056727, at *13 (D.Del. Dec. 13, 1996).

In the present case, Petitioner appears to be challenging the Delaware Superior Court's denial of his first Motion for Modification of Sentence for being time-barred. However, as Respondent correctly argues, this **claim** fails to assert a **cognizable** ground for **federal habeas** review. [FN2] Rather, Petitioner's **claim** asserts a **state law** error. Accordingly, the Court cannot consider the merits of the **claim**.

> FN2. Because this **claim** is **not cognizable,** the Court need **not** consider whether it is exhausted. *See Tillett v. Freeman,* 868 F.2d 106, 108 (3d Cir.1989).

**\*2** Additionally, Petitioner has filed with the Court a Motion for the Appointment of Counsel. (D.I.3.) Petitioner asserts that counsel should be appointed because: 1) he is incarcerated; 2) he is unskilled in the **law;** 3) his access to the **law** library is limited; and 4) appointment of counsel would serve "the best interests of justice." *Id.*

It is well settled that Petitioner does **not** have a Sixth Amendment right to counsel in this **habeas** proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). However, a district court may appoint counsel to represent an indigent **habeas** petitioner "if the interest of justice so requires." Rule 8(c), 28 U.S.C. *foll.* § 2254. As explained above, the Court is dismissing Petitioner's § 2254 petition because it fails to allege a ground **cognizable** on **federal habeas** review. In this circumstance, the "interests of justice" do **not** require the appointment of counsel. *See* 18 U.S.C. § 3006A(a)(2)(B). Thus, the Court will deny Petitioner's Motion for the Appointment of Counsel.

IV. Certificate of Appealability

Finally, the Court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule

22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional **claims** debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

For the reasons stated above, the Court concludes that Petitioner has failed to present the Court with a **claim cognizable** on **federal habeas** review. Reasonable jurists would **not** find this conclusion unreasonable. Consequently, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will **not** be issued.

V. CONCLUSION

For the foregoing reasons, Petitioner's request for **habeas** relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.

ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

    1. Petitioner Kenneth L. Guinn's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.2.) is DENIED.
    2. Petitioner's Motion for Appointment of Counsel (D.I.3.) is DENIED as moot.
    3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2004 WL 758350 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00524 (Docket) (May. 30, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                      Page 1
Slip Copy, 2006 WL 1540823 (D.N.J.)
**(Cite as: 2006 WL 1540823 (D.N.J.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

NOT FOR PUBLICATION

United States District Court,
D. New Jersey.
Gregory OLIVER, Petitioner,
v.
Roy L. HENDRICKS, et al., Respondents.
**No. Civ.A. 04-4219(JAG).**

May 31, 2006.
 Gregory Oliver, # 295179A, New Jersey State
Prison, Trenton, New Jersey, Petitioner pro se.

 Terry Bogorad, Senior Assistant Prosecutor, Passaic
County Prosecutor's Office, Paterson, New Jersey, for
Respondents.

*OPINION*

GREENAWAY, Jr., District Judge

 *1 Gregory Oliver filed a Petition for a Writ of
Habeas Corpus, pursuant to 28 U.S.C. § 2254(a),
challenging a judgment of conviction in the Superior
Court of New Jersey. Respondents filed an Answer,
arguing that the Petition should be dismissed on the
merits. Petitioner filed a Traverse. For the reasons
expressed below, this Court shall dismiss the Petition
with prejudice and decline to issue a certificate of
appealability. *See* 28 U.S.C. § § 2253(c), 2254(a),
(b), (c).

*I. BACKGROUND*
 Petitioner challenges a judgment of conviction, filed
on November 8, 1996, in the Superior Court of New
Jersey, Law Division, Passaic County, after a jury
convicted him of first degree robbery and aggravated
assault. [FN1] The Law Division sentenced Petitioner
to a life sentence with no eligibility for parole under
the Persistent Offender Accountability Act or Three
Strikes Law, N.J. Stat. Ann. § 2C:43-7.1a. Petitioner
appealed, challenging the constitutionality of the
Persistent Offender Accountability Act. The
Appellate Division of the Superior Court of New
Jersey affirmed. *State v. Oliver,* 316 N.J.Super. 592
(App.Div.1998). The Supreme Court of New Jersey

granted certification and, on February 28, 2000,
affirmed. The Court ruled that the Three Strikes Law
was constitutional, and that Petitioner's 1979 pre-
code robbery conviction qualified as a "strike." *State
v. Oliver,* 162 N.J. 580 (2000).

> FN1. According to the New Jersey Supreme
> Court, on December 10, 1995, Petitioner
> struck the victim in the head with a metal
> pipe and stole $100 and crack cocaine. *State
> v. Oliver,* 162 N.J. 580, 584 (2000). The
> assault caused a blood clot in the brain of
> the victim and permanent brain damage. *Id.*

 On or about November 1, 2000, Petitioner filed a
State petition for post-conviction relief in the Law
Division. After conducting an evidentiary hearing, on
April 16, 2002, the Law Division denied relief.
Petitioner appealed and in an opinion filed January
23, 2004 the Appellate Division affirmed the order
denying post-conviction relief. *State v. Oliver,* No. A-
5400-01T1 slip op. (App.Div. Jan. 23, 2004). The
Supreme Court of New Jersey denied certification on
June 4, 2004. *State v. Oliver,* 180 N.J. 453 (2004)
(table).

 Petitioner executed the Petition which is now before
this Court on August 26, 2004. The Clerk received it
on August 31, 2004. This Court notified Petitioner of
the consequences of filing such a Petition under the
Antiterrorism and Effective Death Penalty Act
("AEDPA") and gave him an opportunity to
withdraw the Petition and file one all-inclusive
Petition, pursuant to *Mason v. Meyers,* 208 F.3d 414
(3d Cir.2000). The Petition presents eleven grounds,
which are set forth below verbatim:
 Ground One:   AN   INADEQUATE   JURY
 INSTRUCTION ON ACCOMPLICE LIABILITY,
 WHICH   FAILED   TO   EXPLAIN   THAT
 DEFENDANT HAD TO SHARE THE PURPOSE
 TO COMMIT AN ARMED ROBBERY RATHER
 THAN A ROBBERY, DEPRIVED DEFENDANT
 OF THE RIGHT TO DUE PROCESS OF LAW
 AND A FAIR TRAIL. *U.S. CONST.* AMEND.
 XIV.
 Ground  Two:   IMPROPER   SUMMATION
 COMMENTS,   DESIGNED   TO   INVOKE
 SYMPATHY FOR A VIRTUOUS VICTIM,
 DEPRIVED DEFENDANT OF THE RIGHT TO
 DUE PROCESS OF LAW AND A FAIR TRIAL.
 *U.S. CONST.* AMEND. XIV.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1540823 (D.N.J.)
(Cite as: 2006 WL 1540823 (D.N.J.))

Ground Three: THE STATE FAILED TO ESTABLISH THAT DEFENDANT WAS ELIGIBLE FOR AN EXTENDED TERM OF LIFE IMPRISONMENT WITHOUT PAROLE.

**\*2** Ground Four: THE MANDATORY EXTENDED TERM SENTENCE OF LIFE WITHOUT PAROLE IMPOSED UNDER NEW JERSEY'S "THREE STRIKE" LAW, *N.J.S.A.* 2C:43-7.a, CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT. *U.S. CONST.* AMENDS. VIII, XIV.

Ground Five: THE VIDEOTAPED DEPOSITION WAS EXTREMELY DEFECTIVE, PREJUDICIAL, UNRELIABLE AND VIOLATED RIGHT TO CONFRONTATION UNDER N.J. COURT RULE 3:13- 2(B)(C); AND NEW JERSEY RULES OF EVIDENCE, RULE 804(A)(B).

Ground Six: JUDGE FALCONE'S INVOLVEMENT IN STATE WITNESS CASE WAS BIAS PREJUDICE DUE TO HIS PARTICIPATION IN CO-DEFENDANT'S VIDEOTAPE DEPOSITION AGAINST APPELLANT.

Ground Seven: STATE WITNESS EXTRA-JUDICIAL TESTIMONY WHICH CONSTITUTED IN-COURT IDENTIFICATION WAS INADMISSIBLE NOTWITHSTANDING PRIOR INCONSISTENT HEARSAY STATEMENT.

Ground Eight: WHETHER TRIAL COURT SHOULD HAVE GAVE JURY INSTRUCTION ON IDENTIFICATION, WHERE MISIDENTIFICATION WAS POSSIBLE IN VIOLATION OF THE DEFENDANT'S DUE PROCESS OF LAW.

Ground Nine: THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT.

Ground Ten: TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ADVISE THE DEFENDANT OF THE PENAL CONSEQUENCES CONCERNING THE THREE STRIKES LAW, WHICH RESULTED IN THE DEFENDANT NOT ACCEPTING THE PLEA BARGAIN THAT HAD BEEN OFFERED AND WHICH WOULD HAVE LED TO A SHORTER TERM OF INCARCERATION.

Ground Eleven: COUNSEL WAS INEFFECTIVE FOR NOT REQUESTING PROPER JURY CHARGES AND THUS THE CHARGE TO THE JURY IN ITS ENTIRETY WAS CONFUSING, MISLEADING AND PREJUDICED THE DEFENDANT.

(Pet., Addendum II, Grounds I to XI.)

The State filed an Answer, arguing, *inter alia,* that the Petition should be dismissed on the merits. Petitioner filed a Traverse.

### *II. STANDARD OF REVIEW*

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); *accord Barry v. Bergen County Probation Dept.,* 128 F.3d 152, 159 (3d Cir.1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips,* 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." *Engle v. Isaac,* 456 U.S. 107, 120 n. 19 (1982).

**\*3** In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief. [FN2] Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim. [FN3] "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Johnson v. Rosemeyer,* 117 F.3d 104, 110 (3d Cir.1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." *Smith v. Horn,* 120 F.3d 400, 414 (3d Cir.1997) (citation omitted); *see also Smith v. Zimmerman,* 768 F.2d 69, 71, 73 (3d Cir.1985).

> FN2. *See, e.g., Withrow v. Williams,* 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

satisfying *Miranda*, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the *Miranda* warnings to be involuntary under due process criteria"); *Baker v. Barbo,* 177 F.3d 149, 156 n. 7 (3d Cir.1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

FN3. *See Engle,* 456 U.S. at 119-20 & n. 19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); *Kontakis v. Beyer,* 19 F.3d 110, 116-17 & n. 10 (3d Cir.1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

A district court must give deference to determinations of state courts. *Duncan v. Morton,* 256 F.3d 189, 196 (3d Cir.), *cert. denied,* 534 U.S. 919 (2001); *Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." *Stevens v. Delaware Correctional Center,* 295 F.3d 361, 368 (3d Cir.2002). Where a federal claim was "adjudicated on the merits" [FN4] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

FN4. "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Rompilla v. Horn,* 355 F.3d 233, 247 (3d Cir.2004) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim

without any discussion whatsoever. *Rompilla,* 355 F.3d at 247.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d).

A decision is " 'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Rompilla v. Horn,* 355 F.3d 233, 250 (3d Cir.2004) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)).

Under the " 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. *Id.* at 409-10.

A court begins the analysis by determining the relevant clearly established law. *See Yarborough v. Alvarado,* 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams,* 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71, 72 (2003).

### III. DISCUSSION

*A. Instructions*

**\*4** In Ground One, Petitioner asserts that the instruction on accomplice liability for first degree robbery violated due process because the judge did not properly explain that defendant had to share the purpose to commit an armed robbery. He argues:

Although the judge noted that he would later explain that responsibility as an accomplice may be

equal and the same as who actually committed the crimes or there may be responsibility in a different degree, the promised explanation was never provided. Instead the judge immediately asserted that the theory of accomplice liability was that both defendants were equally responsible for the crime charged. Nothing in the instructions suggested that the jurors might find one defendant guilty of armed robbery and the other only guilty of robbery.
(Pet., Addendum II at 7.)

In rejecting Petitioner's challenge to the accomplice liability instructions, the Appellate Division found:

As a threshold matter, it is questionable whether an accomplice liability charge should have been given at all in this case because neither the State nor defendant presented that scenario.... Even if the judge should have instructed the jury that it could convict defendant of the lesser included offense of second degree robbery as Fisher's accomplice if it found that defendant's purpose was only to participate in the robbery, and not to commit armed robbery, the failure to give a *Bielkiewicz* charge is not plain error where a jury could not reasonably conclude that defendant was an accomplice. Here, there was no evidence presented that the principal may have acted with a different purpose than the accomplice. Hence, even if the judge should have more fully instructed the jury on accomplice liability, the error was harmless.

*State v. Oliver,* 316 N.J.Super. at 597.

In Ground Eight, Petitioner asserts that the failure to instruct the jury on identification violated due process because the primary issue in the case was one of identification. The Appellate Division rejected this claim on direct appeal without discussion.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense ... must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer,* 117 F .3d 104, 110 (3d Cir.1997). As the Third Circuit explained,

It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that

body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it.

*5 Johnson,* 117 F.3d at 110.

Petitioner is not entitled to habeas relief on Grounds One or Eight because he does not point to a federal requirement that jury instructions must include the requested particular provisions, nor does he show that the absence of these instructions deprived him of a defense which federal law provided to him. *Johnson* at 111. Moreover, Petitioner has not shown that the state's adjudication of his claims was contrary to, or involved an unreasonable application of, Supreme Court precedent. Under these circumstances, he is not entitled to habeas relief on Grounds One and Eight.

### B. Extended Term

In Grounds Three and Four, Petitioner challenges the imposition of an extended term, i.e., a life sentence without parole, under the Persistent Offender Accountability Act. In Ground Three, Petitioner argues that the New Jersey courts erred in finding that he had three predicate convictions under the Act. The New Jersey courts found that Petitioner's 1973 and 1979 "pre-Code robbery convictions under N.J.S.A. 2A:141-1 were each for a crime that is substantially equivalent to a crime of first-degree robbery, and therefore should be counted as strikes." *State v. Oliver,* 162 N.J. at 592. Habeas relief is not warranted because eligibility for an extended term under the Persistent Offender Accountability Act is a question of state law. *See Chapman v. United States,* 500 U.S. 453, 465 (1991) (under federal law, "the court may impose ... whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"); *see also Wainwright v. Goode,* 464 U.S. 78 (1983).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In Ground Four, Petitioner argues that the mandatory term of life imprisonment without parole, imposed under the Persistent Offender Accountability Act for Petitioner's third robbery conviction, was contrary to, or an unreasonable application of, clearly established Eighth Amendment jurisprudence, as determined by the Supreme Court.

This argument fails, however, because the Supreme Court specifically rejected this argument in *Lockyer v. Andrade,* 538 U .S. 63, 77 (2003) (because the gross disproportionality principle under the Eighth Amendment "reserves a constitutional violation for only the extraordinary case," in applying this principle for § 2254(d)(1) purposes, the Supreme Court held that it was not an unreasonable application of clearly established Eighth Amendment law for the state court to affirm petitioner's sentence of two consecutive terms of 25 years to life for a "third strike" conviction). Further, Petitioner cites no Supreme Court precedent presenting a contrary view to *Lockyer.*

### C. Prosecutorial Misconduct

In Ground Two, Petitioner argues that the prosecutor's statements during summation violated due process because they improperly invoked sympathy for the victim. Specifically, Petitioner argues that "[t]he prosecutor's extensive praise of the victim's good character and use of his own experience to help others was nothing less than an inflammatory appeal for sympathy. The prosecutor was not content simply to point to the victim's efforts to change his life and his drug use. He went so far as to tell the jurors that the counseling and assistance to children should drive their analysis in this case." (Pet., Ground Two.)

**\*6** The record shows that in his summation, defense counsel noted that the victim's credibility was affected by his criminal record. (Defendant's Appellate Division Brief on Direct Appeal at 13; Ex. 3 to Answer) As he began his summation, defense counsel argued:

> I recall Abraham Lincoln saying during the course of the civil war when things weren't going too good for the union, that he who stands alone stands best. Well, I'm here with him and we are standing alone against the power of the State of New Jersey. Don't you think that I feel sorry for Leon Johnson? So he's a crack dealer, so he deals in drugs, so he's got five convictions, at least. But no one should undergo that type of injury, nor the treatment that he had to undertake.

(Transcript of Sept. 19, 1996, p. 11, lines 7 to 14.)

The prosecutor responded to this argument in his summation:

> Mr. Kaiser began his remarks by referring to Leon Johnson, "Baldy," as a crack head and by applying to him a number of descriptions which were somewhat disparaging, somewhat suggesting, I submit, that he was some sort of lesser being who was not entitled to the protection of the law, that he is and was some sort of lesser being who is not worthy of your attention, is not worthy of the law, is not worthy of the protection that the law provides not only to you to me, but to him as well. And nothing could be further from the truth....

(Transcript of Sept. 19, 1996, page 19, lines 4 to 12.)

The Appellate Division rejected both claims without discussion on direct appeal.

Prosecutorial misconduct may "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." *Id.* at 642. The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. *Darden v. Wainwright,* 477 U.S. 168, 182 (1986); *Donnelly,* 416 U.S. at 644; *Moore v. Morton,* 355 F.3d 95, 111 (3d Cir.2001).

In this case, the prosecutor's comments about the victim were made in response to an argument raised by the defense. However, the prosecutor's comments did not infect the trial with unfairness as to make the resulting conviction a denial of due process under *Donnelly,* 416 U.S. at 643. Thus, Petitioner is not entitled to habeas relief under Ground Two.

### D. Confrontation Clause

In Ground Five, Petitioner asserts that the trial judge's admission of a videotaped deposition of Petitioner's co-defendant violated his rights under the Confrontation Clause. Respondents argue that the admission of the videotaped testimony of co-defendant Fisher did not violate the Confrontation Clause because Fisher was unavailable at trial and defense counsel cross-examined him during the videotaped deposition.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*7 The admissibility of evidence is generally a question of state law. *See Keller v. Larkins,* 251 F.3d 408, 416 n. 2 (3d Cir.2001); *Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir.1978). However, the Sixth Amendment's Confrontation Clause confers rights that cannot be satisfied merely by meeting the requirements of the rules of evidence. The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This guarantee applies to both federal and state prosecutions. *Pointer v. Texas,* 380 U.S. 400 (1965). The Confrontation Clause prohibits the admission of out-of-court testimony unless "the declarant is unavailable, and ... the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington,* 541 U.S. 36, 68 (2004); *see also United States v. Lore,* 430 F.3d 190, 209 (3d Cir.2005); *United States v. Hinton,* 423 F.3d 355, 358 (3d Cir.2005).

In this case, the record shows that, prior to trial, the state moved to depose James Fisher, Petitioner's co-defendant, by videotape because Fisher suffered from cancer and might not live to testify at trial. On July 24, 1996, Fisher's oncologist testified that Fisher had a recurrence of a locally invasive malignancy of the tongue, that he was not physically fit to receive additional chemotherapy or radiation therapy, that he was terminally ill, and it was likely that he would not survive longer than six months. After cross-examining the oncologist, Petitioner's attorney stated that he did not object to deposing Mr. Fisher. (Transcript of July 24, 1996, p. 49, lines 23-25.) Fisher was brought into court and his deposition was videotaped. Although it was difficult for Fisher to speak, Petitioner's attorney cross-examined him. Fisher answered the questions posed by using hand gestures and garbled speech. Petitioner was present during the deposition. (*Id.,* pp. 78 to 97 .)

On September 10, 1996, during the trial, the trial court conducted a hearing outside the presence of the jury on the admissibility of Fisher's deposition. After hearing testimony and cross-examination of Fisher's physician and his sister, the trial judge watched the videotaped deposition. The next day, the trial judge allowed the videotaped deposition to be shown to the jury, finding that because Fisher was unavailable to testify at that time, Petitioner's Sixth Amendment confrontation rights were not violated.

Admission of the videotaped deposition did not violate the Confrontation Clause because Fisher was

unavailable to testify at trial and he was cross-examined on the videotape. *See Crawford,* 541 U.S. at 51; *Hinton,* 423 F.3d at 359. Because the admission of a videotaped deposition was not contrary to, or an unreasonable application of, the Supreme Court's Confrontation Clause precedent, Petitioner is not entitled to habeas relief on Ground Five.

### E. Judicial Bias

*8 In Ground Six, Petitioner argues that the judge who entered the order permitting the videotaped deposition of James Fisher was biased because the judge was also involved in the criminal proceeding against Jamie Sisco, another co-defendant. However, a judge's failure to *sua sponte* disqualify himself does not rise to the level of a constitutional claim. *See Liteky v. United States,* 510 U.S. 540, 551 (1994) ("Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant"); *United States v.. Schreiber,* 599 F.2d 534 (3d Cir.1979) (trial judge did not commit plain error in failing *sua sponte* to recuse himself in a non-jury criminal trial where judge had previously presided over a jury trial in which same defendant had been found guilty of similar charges).

Here, the judge's failure to *sua sponte* disqualify himself was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, Petitioner is not entitled to habeas relief on Ground Six.

### F. Admission of Evidence

Petitioner argues in Ground Seven that "State Witness Extra-Judicial Testimony Which Constituted In-Court Identification Was Inadmissible Notwithstanding Prior Inconsistent Hearsay Statement." (Pet., Ground 7.) As factual support, Petitioner asserts that the admission of Jamie Sisco's testimony that he was present during the crime and that Petitioner was a participant was inconsistent with Sisco's prior written statement read to the grand jury. The government argues that Ground Seven does not state a federal claim and that, in any event, Sisco's inconsistent statements inured to Petitioner's benefit.

Petitioner does not assert that the admission of Sisco's testimony violated his federal constitutional

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

rights, and the admissibility of evidence is generally a question of state law which is not cognizable under habeas review. *See Keller v. Larkins,* 251 F.3d 408, 416 n. 2 (3d Cir.2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); *Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir.1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling ... that error was at best one of interpretation of the state's law of evidence and did not [ ]rise to constitutional dimensions").

The state court's adjudication of Petitioner's claim regarding the admission of Sisco's testimony did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Petitioner is not entitled to habeas relief under Ground Seven.

*G. Ineffective Assistance of Counsel*

**\*9** In Grounds Nine, Ten, and Eleven, Petitioner argues that trial counsel was constitutionally ineffective in failing to investigate properly, failing to ensure that the table in the room where the incident occurred was tested for fingerprints, failing to object to the introduction of prejudicial hearsay testimony from Detective Jordan, failing to advise Petitioner that he was subject to a life term under the Persistent Offender Accountability Act before Petitioner rejected a plea offer of 20 years, and failing to request proper jury charges.

The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington,* 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.* Second, the defendant must show that "there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

In this case, Petitioner presented his ineffective assistance of counsel claims on post-conviction review. The Appellate Division rejected these claims for the reasons set forth by Judge Riva in his letter opinion of March 26, 2002. *State v. Oliver,* No. A-5400-01T4 slip op. (App.Div. Jan. 23, 2004). Judge Riva conducted an evidentiary hearing on Petitioner's ineffective assistance of counsel claims and heard the testimony of defense counsel. Judge Riva determined that Petitioner had not shown deficient performance or prejudice.

> Applying the *Strickland-Cronic-Fritz* standard to the facts of this case, I hold ... that Oliver has failed to prove by a preponderance of the credible evidence that either his trial or appellate counsel was constitutionally ineffective. There is no credible evidence that either trial or appellate counsel was "deficient." The record is devoid of evidence suggesting a complete denial of Oliver's right to counsel. In fact, Oliver does not assert such a claim. Likewise, no credible evidence exists that Oliver was "actually prejudiced." In other words, there is no rational basis for me to conclude that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceedings would have been different....

**\*10** (Opinion of Law Div. dated March 26, 2002, Ex. 16 to Answer.) [FN5]

> FN5. For example, Judge Riva determined that counsel was not deficient in failing to have the table tested for fingerprints because "the failure of the State to secure such evidence inured to Oliver's benefit since there was no fingerprint or DNA evidence tending to inculpate Oliver by placing him at the crime scene." p. 14.

This Court has carefully reviewed the record on post-conviction review regarding Petitioner's claim that counsel failed to inform him during plea negotiations of his exposure to an extended term as a persistent offender. The Third Circuit has held that counsel's failure to inform the defendant about his sentencing exposure constitutes deficient performance. *See Baker v. Barbo,* 177 F .3d 149 (3d Cir.1999) ("we must hold that an attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is ineffective"); *United States v. Day,* 969 F.2d 39, 43 (3d Cir.1992).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Petitioner's trial counsel testified before Judge Riva. Judge Riva found that counsel knew during plea negotiations that the prosecution intended to seek an extended sentence under the Persistent Offender Accountability Act, that counsel informed Petitioner about the applicability of the Act, and that Petitioner rejected the state's initial plea offer of 20 years, with 10 years of parole ineligibility, based upon his belief that Fisher's health would prevent him from testifying against Petitioner.

Factual determinations, such as those made by Judge Riva, "are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003).

Judge Riva's factual determinations are not objectively unreasonable in light of the testimony heard by Judge Riva, and Petitioner has not presented clear and convincing evidence to the contrary. Under these circumstances, Petitioner has not shown that the advice he received was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer." *Day,* 969 F.2d at 43; *see also Hill v. Lockhart,* 474 U.S. at 56-57; *Von Moltke v. Gillies,* 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered").

Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims because he has not shown that the adjudication of the claims by the New Jersey courts resulted in a decision that was contrary to, or involved an unreasonable application of, Supreme Court jurisprudence.

### H. Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell,* 537 U.S. 322 (2003).

### IV. CONCLUSION

*11 Based on the foregoing, this Court shall dismiss the Petition with prejudice and decline to issue a certificate of appealability under 28 U.S.C. § 2253(c).

Slip Copy, 2006 WL 1540823 (D.N.J.)

### Motions, Pleadings and Filings (Back to top)

• 2:04cv04219 (Docket) (Aug. 31, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2006, I electronically filed an answer to a habeas petition with the Clerk of Court using CM/ECF. I also hereby certify that on June 29, 2006, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

    Robert E. Warrington
    SBI No. 442182
    Delaware Correctional Center
    1181 Paddock Road
    Smyrna, DE 19977


                            /s/ Elizabeth R. McFarlan
                            Deputy Attorney General
                            Department of Justice
                            820 N. French Street
                            Wilmington, DE 19801
                            (302) 577-8500
                            Del. Bar. ID No. 3759
                            elizabeth.mcfarlan@state.de.us